## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

**IN RE: Stanley H. Thompson**          **CASE NUMBER: 19-50486-JAM**
**DEBTOR**

**CHAPTER 7**

## NOTICE OF CONTESTED MATTER RESPONSE DEADLINE

BANK OF AMERICA, N.A., (the "Movant") has filed a Motion for Relief from Automatic Stay

(Real Property), (the "Contested Matter"), in the above-captioned case.  Notice is hereby given that

any response to the Contested Matter must be filed with the Court no later than **June 17, 2019.\***  In

the absence of a timely filed response, the proposed order in the Contested Matter *may* enter

without further notice and hearing, see, 11 U.S.C. § 102 (1).

Dated: **June 3, 2019**                    By:  **BANK OF AMERICA, N.A.**

\*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three

days are added after the response date set in this notice.

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

**IN RE: Stanley H. Thompson**
**DEBTOR**

**CASE NUMBER: 19-50486-JAM**

**CHAPTER 7**

### CERTIFICATION OF SERVICE

In accordance with the applicable provisions of the Federal Rules of Bankruptcy Procedure, 2002,

and 7004, the undersigned certifies that on the 3rd day of June, 2019, the following documents

were served on the U.S. Trustee and all appearing parties via the court's electronic filing system

and by first class mail on the parties listed below:

**Documents Served:**
1. Motion for Relief from Automatic Stay (Real Property)
2. Proposed Order
3. Notice of Contested Matter

**Parties Served Via First Class Mail: (Complete Address Must Be Listed)**
Stanley H. Thompson
Debtor
162 Strawberry Hill Avenue
Norwalk, CT 06851

Select Portfolio Servicing
Attn: Collection Agent
P.O. Box 65250
Salt Lake City, UT 84165

By */s/ Sara M. Buchanan*
Sara M. Buchanan
The Movant's Attorney
Federal Bar No.ct30340
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 171
Farmington, CT 06032
Phone (860) 677-2868
Fax (860) 409-0626
Email: BKECF@bmpc-law.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **In Re: 19-50486-JAM** | ) | **Chapter 7    Proceeding** |
| | ) | |
| **Stanley H. Thompson** | ) | |
| **Debtor** | ) | |
| | ) | |
| **BANK OF AMERICA, N.A.** | ) | |
| **Movant** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Stanley H. Thompson** | ) | |
| **and  George I. Roumeliotis , Trustee** | ) | **June 3, 2019** |
| **Respondent** | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)

BANK OF AMERICA, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §
362, for relief from the automatic stay with respect to certain real property of the Debtor having an
address of 162 Strawberry Hill Avenue, Norwalk, Connecticut 06851-5936 (the "Property"). In
further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with
respect to the Debtor on April 12, 2019.

2.      The Debtor has executed and delivered or is otherwise obligated with respect to that
certain promissory note in the original principal amount of $225,250.00 (the "Note").  A copy of
the Note is attached hereto as Exhibit A.  Movant is an entity entitled to enforce the Note and the
Mortgage (defined below).

3.      Pursuant to that certain Open-End Mortgage Deed (the "Mortgage"), all obligations
(collectively, the "Obligations") of the Debtor under and with respect to the Note and the
Mortgage are secured by the Property.  A copy of the Mortgage is attached hereto as Exhibit B.

4.      The Mortgage has been assigned to the Movant pursuant to that certain assignment of mortgage, a copy of which is attached hereto as Exhibit C.

5.      The Debtor's statement of intention indicates the Property is to be surrendered. A copy of which is attached hereto as Exhibit D.

6.      As of April 24, 2019, the approximate outstanding amount of the Obligations less any partial payments or suspense balance is $208,987.97.

7.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $750.00 in legal fees and $181.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8.      As of April 24, 2019, the Debtor has failed to make payments in an aggregate amount sufficient to satisfy in full the payment contractually due under the Note on February 1, 2017 or any full payment contractually due under the Note thereafter.

9.      A foreclosure judgment entered in favor of the Movant.  See Exhibit E. The Creditor requests the Court take judicial notice of the Connecticut Superior Court's files and records pursuant to Federal Rule of Evidence 201(c)(2).

10.     The estimated market value of the Property is $390,000.00.  The basis for such valuation is Debtor's Schedule A, a copy of which is attached hereto as Exhibit F.

11.     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, are:  (i) Movant $208,987.97; and (ii) Select Portfolio Servicing $134,000.00.

12.     The Schedules of the Debtor lists an exemption for the Property in the amount of

$61,000.00.

13.    Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic stay for the following reasons:

(a)    The Debtor has indicated an intent to surrender the Property.  This means the Debtor does not intend to tender payment to the Movant post-petition.

(b)    The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.    That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.    For such other relief as the Court deems proper.

BANK OF AMERICA, N.A.

By /s/ Sara M. Buchanan
  Sara M. Buchanan
  The Movant's Attorney
  Federal Bar No.ct30340
  Bendett & McHugh, P.C.
  270 Farmington Avenue, Suite 171
  Farmington, CT 06032
  Phone (860) 677-2868
  Fax (860) 409-0626
  Email: BKECF@bmpc-law.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: 19-50486-JAM | ) | Chapter 7    Proceeding |
| | ) | |
| Stanley H. Thompson | ) | |
|    Debtor | ) | |
| | ) | |
| | ) | RE: ECF No. |
| BANK OF AMERICA, N.A. | ) | |
|    Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Stanley H. Thompson | ) | |
| and George I. Roumeliotis, Trustee | ) | |
|    Respondent | ) | |

### ORDER GRANTING MOTION FOR RELIEF

    After notice and a hearing, _see_ Bankruptcy Code Section 102(1), on BANK OF AMERICA, N.A., (hereafter, the "Movant"), Motion for Relief from the Automatic Stay, (hereafter, the "Motion") ECF No. _____:

    **IT IS HEREBY ORDERED** that the Motion is Granted—the automatic stay of 11 U.S.C. § 362(a) is modified to permit the Movant, its designated servicing agent, and/or its successors and assigns to commence, continue, and prosecute to judgment a foreclosure action and obtain possession in accordance with applicable state law and otherwise exercise its rights, if any, with respect to real property known as **162 Strawberry Hill Avenue, Norwalk, Connecticut 06851** in accordance with applicable state law, and

    **IT IS FURTHER ORDERED** that the Movant, its designated servicing agent, and/or its successors and assigns may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement, including accepting a deed in lieu of foreclosure from the Debtor.  The Movant or its designated servicing agent may contact the Debtor via telephone or written correspondence to offer such an agreement.  In the event the Debtor receives a discharge, any such agreement shall be non-recourse against the Debtor unless included in a reaffirmation agreement, and

**IT IS FURTHER ORDERED** that the 14-day stay of Fed.R.Bankr.P. 4001 (a)(3) is not applicable and the Movant may immediately enforce and implement this order.

No deficiency judgment shall be enforced without the further order of the Court, unless this case is dismissed.

Dated: _____          BY THE COURT


                                     _____
                                     Honorable Julie A. Manning
                                     U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT

In Re: Stanley H. Thompson

**BK No.** 19-50486-JAM

Debtor(s)

**Chapter** 7

## RELIEF FROM STAY WORKSHEET-REAL ESTATE

ASST. VICE PRESIDENT

I ALEX HUYNH as _____ **(Name and Title) of** BANK OF AMERICA, N.A. (hereinafter,
"**Movant**") **hereby declare (or certify, verify, or state):**

### BACKGROUND INFORMATION

1.   **Real property address which is the subject of this motion:**
     162 STRAWBERRY HILL AVENUE, NORWALK CT, 06851-5936

2.   **Lender Name:** Bank of America, N. A.

3.   **Date of Mortgage:** April 7, 2004

4.   **Post-Petition payment address:** PO Box 15222, Wilmington, DE 19886-5222.

5.   **The manner in which the movant perfected its interest in the property:** *The lien created by
     the Mortgage was perfected by recording the Mortgage in Norwalk, Connecticut on April
     12, 2004 in Book 05368 at Page 0001.*

6.   **All other material liens and encumbrances on the property:** Select Portfolio Servicing
     $134,000.00.

### DEBT/VALUE REPRESENTATIONS

7.   **Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing
     the motion:** *$208,987.97.*[1]

     **(Note: this amount may not be relied on as a "payoff" quotation.)**

8.   **Movant's estimated market value of the real property:** $ 390,000.00

9.   **Source of estimated valuation: DEBTOR'S SCHEDULE A**

---

[1] The total pre-petition and post-petition indebtedness listed in paragraph 7 is as of *April 24, 2019.*

### STATUS OF DEBT AS OF THE PETITION DATE

10.    Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date: *$208,695.70*[2].
   A.    **Amount of principal:** $ *168,665.18*
   B.    **Amount of interest:**   $ *22,139.98*
   C.    **Amount of escrow (taxes and insurance):** $ *12,215.82*[3]
   D.    **Amount of forced placed insurance expended by Movant:** $ *0.00*
   E.    **Amount of Attorney's fees billed to Debtor(s) pre-petition:** $ *4,460.00*
   F.    **Amount of pre-petition late fees, if any, billed to Debtor(s):** $ *197.16*

11.    **Contractual interest rate:** *5.750%* (if interest rate is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: _____.)

12.    **Only with regard to a post-petition default, explain any additional pre-petition fees, charges or amounts charged to Debtor(s) account and not listed above:** *Appraisal $300.00; Title Search $225.00; Recording Fees $116.00; Marshal Fees $148.00; Complaint $360.00*

   **(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: _____.)**

### AMOUNT OF ALLEGED POST-PETITION DEFAULT (AS OF *04/24/2019*)

13.    **Date last payment was received:** *03/07/2017*

14.    **Alleged total number of payments post-petition from filing of petition through payment due on** N/A.

15.    **Please list all post-petition payments alleged to be in default:**

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due: | Payment Amount Due Post Petition: |
| --- | --- |
| N/A | $0.00 |
| Totals: | $0.00 |

---

[2]  The total pre-petition indebtedness is net of partial payments held in the amount of *$131.44*.

[3]  Amounts in paragraph 10.C. represent amounts actually advanced on behalf of the Debtor(s).

**SCHEDULE OF PAYMENTS THAT WERE RECEIVED**

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount applied to legal fees or costs (specify) |
|---|---|---|---|---|---|
| None | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals: | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

16.   Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion: $750.00.

17.   Amount of Movant's filing fee for this motion: $ 181.00.

18.   Only to the extent movant is seeking payment in the motion, the amount of other Attorney's fees billed to Debtor post-petition: $ 0.00

19.   Only to the extent movant is seeking payment in the motion, the amount of Movant's Post-petition inspection fees: $ 0.00
      Only to the extent movant is seeking payment in the motion, the amount of Movant's post-petition appraisal/broker's price opinion: $ 0.00

20.   Only to the extent movant is seeking payment in the motion, the amount of forced placed insurance or insurance provided by the Movant post-petition: $ 0.00.

21.   Only to the extent movant is seeking payment in the motion, the amount of the sum held in suspense by Movant in connection with this contract, if applicable: $ 131.44.

22.   Only to the extent movant is seeking payment in the motion, the amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.: $ 0.00[4]

23.   Amount and date of post-petition payments offered by the debtor and refused by the:
      Movant: $ 0.00 _____    Date(s) N/A _____

      Movant: $ 0.00 _____    Date(s) N/A _____

      Movant: $ 0.00 _____    Date(s) N/A _____

---

[4] The post-petition payments alleged in default for this impounded loan listed in paragraph 15 include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed again separately in 21 or 23 to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, the Bank will determine whether the escrow payments assessed to the debtor (including the missed escrow payments detailed in paragraph 15) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)     Copies of documents that indicate Movant's interest in the subject property.  For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party.  (Exhibit A-Note, B- Mortgage, C- Assignment of Mortgage, G-Payment History.)

(2)     Copies of documents establishing proof of standing to bring this Motion.
(Exhibit A-Note, B- Mortgage, C- Assignment of Mortgage.)

(3.)     Copies of documents establishing that Movant's interest in the real property was perfected.  For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibit B-Mortgage.)

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows: One or more documents may be in the possession of the custodian and/or agent of Movant.

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on    MAY 31, 2019 _____    [date]

_____
[signature]
ALEX HUYNH
ASST. VICE PRESIDENT
_____
[title]

CASE# 19-50486 - JAM

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of  Ventura _____

Subscribed and sworn to (or affirmed) before me on this 31st day of May , 20 19 , by
Alex Huynh _____ , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Notary Public            (Seal)

WENDY R. ALTMAN
COMM.# 2164797
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires Oct. 13, 2020

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

In re:

**Stanley H. Thompson ,**

Debtor(s).

Chapter 7

Case No. **19-50486-JAM**

## DECLARATION IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

I, ALEX HUYNH                    , declare under penalty of perjury as follows:

2.      I am a/an ASST. VICE PRESIDENT            of Bank of America, N.A.

("BANA") and am authorized to sign this declaration on behalf of BANA. This declaration is

provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously

herewith.

3.      As part of my job responsibilities for BANA, I have personal knowledge of and

am familiar with the types of records maintained by BANA in connection with the loan that is

the subject of the Motion (the "Loan") and the procedures for creating those types of records. I

have access to and have reviewed the books, records and files of BANA that pertain to the Loan

and extensions of credit given to Debtor(s) concerning the property securing such Loan.

4.      The information in this declaration is taken from BANA's business records

regarding the Loan. The records are: (a) made at or near the time of the occurrence of the

matters recorded by persons with personal knowledge of the information in the business record,

or from information transmitted by persons with personal knowledge; (b) kept in the course of

regularly conducted business activities; and (c) it is the regular practice of BANA to make such records.

     5.    The Debtor, Stanley H. Thompson, has executed and/or delivered and/or is otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain Open-End Mortgage Deed referenced in the Motion (the "Mortgage"), all obligations of the Debtor under and with respect to the Note and the Mortgage are secured by the property referenced in the Motion.

     6.    As of April 24, 2019, the amount of the outstanding Obligations is at least $208,987.97.

     7.    Attached hereto as Exhibit G is a contractual payment history, which history is incorporated herein by reference. The contractual due date is February 1, 2017.

     Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this __31__ day of __MAY__ , __2019__ .

Name:  ALEX HUYNH
Title:   ASST. VICE PRESIDENT

CASE# 19-50486-JAM

# EXHIBIT A



■ =Redacted Information

Prepared by: EMILY LAVERDIERE

LOAN #: ■

# NOTE

APRIL 07, 2004              MERIDEN              CONNECTICUT
[Date]                      [City]               [State]

162 STRAWBERRY HILL AVENUE, NORWALK, CT 06851
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 225,250.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST       day of each month beginning on
JUNE 01, 2004     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  MAY 01, 2034       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,314.50

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment .

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                                                    Initials _____

VMP MORTGAGE FORMS - (800)521-7291

●-5N (0207).01       CHL (03/03)(d)              Page 1 of 2                              **Form 3200 1/01**

 

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
STANLEY R. THOMPSON         -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                        -Borrower

*[Sign Original Only]*

-5N (0207).01      CHL (03/03)                    Page 2 of 2                         Form 3200 1/01

# EXHIBIT B

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

```
INSTR # 2004008246
VOL 05368 PG 0001
RECORDED 04/12/2004  03:01:31 PM
ANDREW S. GARFUNKEL
TOWN CLERK  NORWALK CT
```

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
EMILY LAVERDIERE

█ =Redacted Information

─────────────[Space Above This Line For Recording Data]─────────────

�height█████████████

(Doc ID #)

## OPEN-END MORTGAGE DEED

MIN ████████████████

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 07, 2004 , together with all Riders to this document.
(B) "Borrower" is
STANLEY H THOMPSON

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK . Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(E) "Note" means the promissory note signed by Borrower and dated APRIL 07, 2004 . The Note states that Borrower owes Lender
TWO HUNDRED TWENTY FIVE THOUSAND TWO HUNDRED FIFTY and 00/100

Dollars (U.S. $ 225,250.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 01, 2034 .

CONNECTICUT-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11          Initials: SV

████ -6A(CT) (0005)    CHL (08/00)(d)    VMP MORTGAGE FORMS - (800)521-7291          Form 3007 1/01
CONV/VA

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

DOC ID #:

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the COUNTY of FAIRFIELD :
[Type of Recording Jurisdiction]  [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                           which currently has the address of
162 STRAWBERRY HILL AVENUE, NORWALK
[Street/City]

Connecticut    06851    ("Property Address"):
[Zip Code]

Initials: _____

MERS -6A(CT) (0005)    CHL (00/00)    Page 2 of 11    Form 3007 1/01

DOC ID #:

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

Initials: [signature]

@ -6A(CT) (0005)    CHL (08/00)    Page 3 of 11    Form 3007 1/01

DOC ID #: ███████

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Book5368/Page4

DOC ID #: ▉▉▉▉▉▉▉▉

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

DOC ID #: ▓▓▓▓▓▓▓▓

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender for any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

DOC ID #:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

DOC ID #:

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

-6A(CT) (0005)    CHL (08/00)          Page 8 of 11          Initials: _S.T._    Form 3007 1/01

DOC ID #:

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires a connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any

MERS-6A(CT) (0006)    CHL (08/00)    Page 9 of 11    Initials: S.T.    Form 3007 1/01

DOC ID #: ████████

Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. Future Advances. Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____    _____ (Seal)
                              STANLEY M. THOMPSON        -Borrower

Lee Fleming    Lee Fleming   _____ (Seal)
                                                         -Borrower

                              _____ (Seal)
                                                         -Borrower

                              _____ (Seal)
                                                         -Borrower

STATE OF CONNECTICUT, New Haven

DOC ID #: ████████

County ss: Meriden

The foregoing instrument was acknowledged before me this 7th Day of April, 2004

by

STANLEY H. Thurber

My Commission Expires:

N/A

_Notary Public_

BRIAN WILLIAMS

Commissioner of Superior Court

Prepared by: EMILY LAVERDIERE

### COUNTRYWIDE HOME LOANS, INC.

Branch #: 0000216
401 WAMPANOAG TRAIL SUITE 200
DATE:       04/07/2004
CASE #:
DOC ID #:
EAST PROVIDENCE, RI 02915
Phone: (401) 431-4600
Br Fax No.: (401) 434-4287

BORROWER: STANLEY H. THOMPSON
PROPERTY ADDRESS: 162 STRAWBERRY HILL AVENUE
                  NORWALK, CT 06851

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
Legal Description Exhibit A
2C40 (-XX (04/03)(d)

# SCHEDULE A
## DESCRIPTION

All that certain piece, parcel or tract of land with the buildings thereon, shown and designated as "Lot 1, 23.359 more or less, S.F. 0.5363 AC. " on that certain map entitled, "Subdivision Map of Property Prepared For the Estate of Hazel Bronson Thompson Norwalk, Connecticut Scale 1" = 30' date December 13, 1995" which map bears the legend "This survey meets the standards of a Class 'A-2' Survey Wayne J. Arcamone, Connecticut Reg. #15773" and which map is on file in the office of the Norwalk Town Clerk as Map No. 11573. In accordance with said map the said premises are bounded as follows: Northerly: 125.38 feet by Strawberry Hill Avenue; Easterly: 242.70 feet by land now or formerly of the City of Norwalk; Southerly: 101.04 feet by land now or formerly of Russet and Josephine Bassett, and land now or formerly of Harry J. Mills, III and James S. Mills, each in part; Westerly: 204.72 feet by Lot No. 2 as shown on said map.

2

# EXHIBIT C

 =Redacted Information

INSTR # 2017003844
**VOL 8504 PG 56**
RECORDED 03/23/2017  11:27:08 AM
RICHARD A. MCQUAID
TOWN CLERK  NORWALK CT

_____ [Space Above This Line for Recording Data] _____

When Recorded Mail To:
FIRST AMERICAN TITLE COMPANY
NATIONAL RECORDING
1100 SUPERIOR AVE, SUITE 200
CLEVELAND, OH 44114



THOMPSON

CT

FIRST AMERICAN ELS
ASSIGNMENT

Tax/Parcel #: D:5 B:3A L:3

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), whose address is P.O. Box 2026, Flint, MI 48501-2026, does hereby grant, assign, transfer and convey unto **BANK OF AMERICA, N.A.** (herein "Assignee"), whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, and its successors and assigns all its right, title and interest in and to a certain Mortgage described below.

Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**
Borrower(s): **STANLEY H THOMPSON**
Date of Mortgage: **APRIL 7, 2004**
Original Loan Amount: **$225,250.00**
Property Address: **162 STRAWBERRY HILL AVENUE, NORWALK, CONNECTICUT 06851**

Recorded on **APRIL 12, 2004** in INSTRUMENT NO. **2004008246  BOOK 05368  PAGE 0001 TOWN OF NORWALK** , State of CONNECTICUT.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

**MAR 1 6 2017**
Date

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
COUNTRYWIDE HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS

By: _____     REGINA L MCKAY
                                 ASSISTANT VICE PRESIDENT

_____
Witness (Signature):
        Jamie L. Clayton
Witness (Print Name)

_____
Witness (Signature):
        Deborah Abela
Witness (Print Name)

_____ [Space Below This Line for Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this _____ **MAR 1 6 2017** _____

by **REGINA L MCKAY, ASSISTANT VICE PRESIDENT**, of **MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS,
INC., ITS SUCCESSORS AND ASSIGNS**, on behalf of the company. He/She is personally known to me or
who has produced _____ N/A _____ as identification.

_____
Notary Public

Printed Name: _____ Martha Lucia Correa
My commission expires: 1/26/2019

MARTHA LUCIA CORREA
Notary Public, State of Florida
Commission# FF 192844
My comm. expires Jan. 26, 2019

EXHIBIT D

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Stanley H. Thompson** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | **District Of Connecticut** |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 108

# Statement of Intention for Individuals Filing Under Chapter 7    12/15

If you are an individual filing under chapter 7, you must fill out this form if:

■ creditors have claims secured by your property, or
■ you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form.

If two married people are filing together in a joint case, both are equally responsible for supplying correct information.
Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

**Part 1:    List Your Creditors Who Hold Secured Claims**

1. For any creditors that you listed in Part 1 of *Schedule D: Creditors Who Hold Claims Secured by Property* (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: **Bank of America**<br><br>Description of property securing debt: **Single Family Residence** | ☒ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: _____ | ☒ No<br>☐ Yes |
| Creditor's name: **Select Portfolio Servicing**<br><br>Description of property securing debt: **Single Family Residence** | ☒ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: _____ | ☒ No<br>☐ Yes |
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |

Your name    **Stanley H. Thompson**    Case number (if known) _____
First Name    Middle Name    Last Name

---

**Part 2:    List Your Unexpired Personal Property Leases**

For any unexpired personal property lease that you listed in *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G),
fill in the information below. Do not list real estate leases. *Unexpired leases* are leases that are still in effect; the lease period has not yet
ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|
| Lessor's name: | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: | ☐ No |
| Description of leased property: | ☐ Yes |
| Lessor's name: | ☐ No |
| Description of leased property: | ☐ Yes |

---

**Part 3:    Sign Below**

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any
personal property that is subject to an unexpired lease.

✗ /s/Stanley H. Thompson    ✗ _____
Signature of Debtor 1                Signature of Debtor 2

Date **04/05/2019**                Date _____
    MM /  DD  /  YYYY                    MM /  DD  /  YYYY

# EXHIBIT E

ORDER    431197

DOCKET NO: FSTCV176033200S

SUPERIOR COURT

BANK OF AMERICA N.A.
   V.
THOMPSON, STANLEY H, A/K/A
STANLEY HUDSON THOMPSON Et Al

JUDICIAL DISTRICT OF STAMFORD
   AT STAMFORD

6/25/2018

## ORDER

ORDER REGARDING:
06/12/2018 117.00 MOTION FOR JUDGMENT-STRICT FORECLOSURE

The foregoing, having been considered by the Court, is hereby:

ORDER:

Notice of Judgment of Foreclosure by Sale
Property Address: 162 Strawberry Hill Avenue, Norwalk CT 06851
The Committee is ordered to upload pictures of the property on the Judicial website and include a
picture of the property in the newspaper ad. The appraiser is ordered to do an interior appraisal of the
property.

Judgment of Foreclosure by Sale is hereby entered as follows:
Debt: $188,525.50
Attorney Fees: $4,750.00
Total: $193,275.50
Appraisal Fee: $300.00
Title Search Fee: $225.00
Fair Market Value: $390,000.00

The Sale Date is: Saturday, November 10, 2018
Terms of the Sale:
Deposit Amount: $39,000.00 Deposit to be paid by bank or certified check only.
Committee Appointed: KENNETH MARC GRUDER, 200 CONNECTICUT AVENUE, NORWALK,
CT 06854
Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for
Foreclosure by Sale Matters(JD-CV-81).
Independent Appraiser: Nana Smith, Complete Real Estate Answers INC., 22 Dora St, Unit D,
Stamford, CT 06902
Return of Appraisal by: Wednesday, October 31, 2018
Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.
No fees or expenses prior to: Wednesday, September 26, 2018
Sign to be posted no earlier than : Thursday, October 11, 2018
Sign to be posted no later than : Sunday, October 21, 2018

Publication in Norwalk Hour on: 11/2/2018, 11/9/2018
Ad to be posted on Judicial Website.
Plaintiff's Atty: BENDETT & MCHUGH PC, 270 FARMINGTON AVENUE, SUITE 151,
FARMINGTON, CT 06032
Copies sent Monday, July 02, 2018 to:
BENDETT & MCHUGH PC; MARINOSCI LAW GROUP PC; STANLEY H THOMPSON A/K/A
STANLEY HUDSON THOMPSON;KENNETH MARC GRUDER(committee);Nana Smith(appraiser)

Judicial Notice (JDNO) was sent regarding this order.

431197

Judge: ROBERT LOUIS GENUARIO
Processed by: Amy Melashvili

5/28/2019                                Case Detail - FST-CV17-6033200-S

 **State of Connecticut Judicial Branch**
# Superior Court Case Look-up


| Superior Court Case Look-up | |
| --- | --- |
| Civil/Family | |
| Housing | |
| Small Claims | |

Attorney/Firm Juris Number Look-up 🔗

Case Look-up
- By Party Name
- By Docket Number
- By Attorney/Firm Juris Number
- By Property Address

Short Calendar Look-up
- By Court Location
- By Attorney/Firm Juris Number
- Motion to Seal or Close
- Calendar Notices

Court Events Look-up
- By Date
- By Docket Number
- By Attorney/Firm Juris Number

Pending Foreclosure Sales 🔗

Understanding
Display of Case Information

Contact Us



Comments

---

**🖙 FST-CV17-6033200-S**   **BANK OF AMERICA N.A. v. THOMPSON, STANLEY H, A/K/A STANLEY HUDSON THOMPSON Et Al**

**Prefix/Suffix:** [none]   **Case Type:** P00   **File Date:** 09/05/2017   **Return Date:** 09/19/2017

**Case Detail** | Notices | History | Scheduled Court Dates | E-Services Login | Screen Section Help  ▶

Pending Foreclosure Sales                    To receive an email when there is activity on this case, click here. 🔗

Information Updated as of: 05/28/2019

| Case Information | |
| --- | --- |
| **Case Type:** | P00 - Property - Foreclosure |
| **Court Location:** | STAMFORD JD |
| **Property Address:** | 162 Strawberry Hill Avenue, Norwalk, CT 06851 |
| **List Type:** | No List Type |
| **Trial List Claim:** | |
| **Last Action Date:** | 04/26/2019  (The "last action date" is the date the information was entered in the system) |

| Disposition Information |
| --- |
| **Disposition Date:** |
| **Disposition:** |
| **Judge or Magistrate:** |

| Party & Appearance Information | | | |
| --- | --- | --- | --- |
| **Party** | | **No Fee Party** | **Category** |
| **P-01  BANK OF AMERICA N.A.** | | | Plaintiff |
| **Attorney:** 🖙 BENDETT & MCHUGH PC (102892)   File Date: 09/05/2017<br>270 FARMINGTON AVENUE<br>SUITE 151<br>FARMINGTON, CT 06032 | | | |
| **D-01  STANLEY H THOMPSON A/K/A STANLEY HUDSON THOMPSON** | | | Defendant |
| **Self-Rep:** 162 STRAWBERRY HILL AVENUE   File Date: 10/02/2017<br>NORWALK, CT 06851 | | | |
| **D-02  BANK OF AMERICA N.A. A/K/A BANK OF AMERICA NATIONAL ASSOCIATION** | | | Defendant |
| **Attorney:** 🖙 MARINOSCI LAW GROUP PC (431033) File Date: 09/12/2017<br>275 WEST NATICK ROAD<br>SUITE 500<br>WARWICK, RI 02886 | | | |
| **O-01  COMMITTEE** | | | Committee |
| **Attorney:** 🖙 KENNETH MARC GRUDER (308729)   File Date: 07/26/2018<br>200 CONNECTICUT AVENUE<br>NORWALK, CT 068541907 | | | |

**Viewing Documents on Civil, Housing and Small Claims Cases:**

If there is an 🖙 in front of the docket number at the top of this page, then the file is electronic (paperless).

- Documents, court orders and judicial notices in electronic (paperless) civil, housing and small claims cases with a return date on or after January 1, 2014 are available publicly over the internet.* For more information on what you can view in all cases, view the Electronic Access to Court Documents Quick Card.

- For civil cases filed prior to 2014, court orders and judicial notices that are electronic are available publicly over the internet. Orders can be viewed by selecting the link to the order from the list below. Notices can be viewed by clicking the **Notices** tab above and selecting the link.*

Case Detail - FST-CV17-6033200-S

- Documents, court orders and judicial notices in an electronic (paperless) file can be viewed at any judicial district courthouse during normal business hours.*

- Pleadings or other documents that are not electronic (paperless) can be viewed only during normal business hours at the Clerk's Office in the Judicial District where the case is located.*

- An Affidavit of Debt is not available publicly over the internet on small claims cases filed before October 16, 2017.*

*Any documents protected by law Or by court order that are Not open to the public cannot be viewed by the public online And can only be viewed in person at the clerk's office where the file is located by those authorized by law or court order to see them.

| Motions / Pleadings / Documents / Case Status | | | | |
|---|---|---|---|---|
| Entry No | File Date | Filed By | Description | Arguable |
| | 09/05/2017 | P | SUMMONS | |
| | 09/05/2017 | P | COMPLAINT | |
| | 09/12/2017 | D | APPEARANCE<br>Appearance | |
| | 10/02/2017 | | APPEARANCE<br>stanley thompson | |
| | 10/04/2017 | | APPEARANCE<br>stanley thompson | |
| | 07/26/2018 | O | APPEARANCE<br>Appearance | |
| 100.30 | 09/05/2017 | P | RETURN OF SERVICE | No |
| 101.00 | 09/11/2017 | C | FORECLOSURE MEDIATION – ELIGIBLE CASE (NO DOCUMENT) | No |
| 102.00 | 09/11/2017 | P | FORECLOSURE MEDIATION PLAINTIFF'S COMPLIANCE WITH SERVICE (NO DOCUMENT) | No |
| 103.00 | 09/11/2017 | C | FORECLOSURE MEDIATION-COMPLIANCE WITH P.A.09-209 (NO DOCUMENT) SEE FORM# JD-CV-109 | No |
| 104.00 | 10/02/2017 | D | FORECLOSURE MEDIATION REQUEST/CERTIFICATE JD-CV-108<br>RESULT: Order 10/11/2017 BY THE CLERK | No |
| 104.01 | 10/11/2017 | C | ORDER<br>RESULT: Order 10/11/2017 BY THE CLERK | No |
| 105.00 | 10/04/2017 | D | FORECLOSURE MEDIATION REQUEST/CERTIFICATE JD-CV-108<br>RESULT: Order 10/11/2017 BY THE CLERK | No |
| 105.01 | 10/11/2017 | C | ORDER<br>RESULT: Order 10/11/2017 BY THE CLERK | No |
| 106.00 | 11/20/2017 | C | FORECLOSURE MEDIATOR'S PREMEDIATION REPORT | No |
| 107.00 | 01/19/2018 | C | FORECLOSURE MEDIATOR'S REPORT | No |
| 108.00 | 04/19/2018 | C | FORECLOSURE MEDIATOR'S REPORT | No |
| 109.00 | 05/03/2018 | D | FORECLOSURE MEDIATION - MOTION FOR MODIFICATION OF MEDIATION PERIODJD-CV-96<br>RESULT: Denied 5/21/2018 HON DAVID TOBIN | No |
| 109.01 | 05/21/2018 | C | ORDER<br>RESULT: Denied 5/21/2018 HON DAVID TOBIN | No |
| 110.00 | 05/17/2018 | P | FORECLOSURE MEDIATION - OBJECTION JD-CV-95<br>RESULT: Sustained 5/21/2018 HON DAVID TOBIN | No |
| 110.01 | 05/21/2018 | C | ORDER<br>RESULT: Sustained 5/21/2018 HON DAVID TOBIN | No |
| 111.00 | 05/17/2018 | C | FORECLOSURE MEDIATOR'S REPORT | No |

Case Detail - FST-CV17-6033200-S

| 112.00 | 05/21/2018 | C | FORECLOSURE MEDIATION TIME PERIOD EXPIRED | No |
|---|---|---|---|---|
| 113.00 | 06/01/2018 | P | MOTION FOR DEFAULT-FAILURE TO PLEAD <br> *RESULT:* Granted 6/12/2018 BY THE CLERK | No |
| 113.01 | 06/12/2018 | C | ORDER <br> *RESULT:* Granted 6/12/2018 BY THE CLERK | No |
| 114.00 | 06/01/2018 | P | DEMAND FOR DISCLOSURE OF DEFENSE PB 13-19 | No |
| 115.00 | 06/01/2018 | P | AFFIDAVIT OF COMPLIANCE WITH EMAP | No |
| 116.00 | 06/01/2018 | P | MOTION FOR DEFAULT FOR FAILURE TO DISCLOSE DEFENSE <br> *RESULT:* Granted 6/25/2018 HON ROBERT GENUARIO | No |
| 116.01 | 06/25/2018 | C | ORDER <br> *RESULT:* Granted 6/25/2018 HON ROBERT GENUARIO <br> **Last Updated:** Entry Number - 06/25/2018 | No |
| 117.00 | 06/12/2018 | P | MOTION FOR JUDGMENT-STRICT FORECLOSURE <br> *RESULT:* Order 6/25/2018 HON ROBERT GENUARIO | Yes |
| 117.01 | 06/25/2018 | C | ORDER <br> *RESULT:* Order 6/25/2018 HON ROBERT GENUARIO | No |
| 118.00 | 06/01/2018 | C | FORECLOSURE MEDIATOR'S FINAL REPORT - MEDIATION PERIOD TERMINATED | No |
| 119.00 | 06/19/2018 | P | PRELIMINARY STATEMENT OF DEBT | No |
| 120.00 | 06/21/2018 | P | FORECLOSURE WORKSHEET JD-CV-77 | No |
| 121.00 | 06/21/2018 | P | AFFIDAVIT OF DEBT | No |
| 122.00 | 06/21/2018 | P | AFFIDAVIT RE: ATTORNEY/COUNSEL FEES | No |
| 123.00 | 06/21/2018 | P | OATH OF APPRAISERS <br> and appraisal | No |
| 124.00 | 06/21/2018 | D | OBJECTION <br> *RESULT:* Sustained 6/25/2018 HON ROBERT GENUARIO | No |
| 124.01 | 06/25/2018 | C | ORDER <br> *RESULT:* Sustained 6/25/2018 HON ROBERT GENUARIO | No |
| 125.00 | 06/25/2018 | C | JUDGMENT OF FORECLOSURE BY SALE | No |
| 126.00 | 07/05/2018 | P | NOTICE TO ALL PARTIES | No |
| 127.00 | 10/31/2018 | O | OATH OF APPRAISERS | No |
| 128.00 | 10/31/2018 | O | APPRAISAL | No |
| 129.00 | 10/21/2018 | D | MOTION FOR WAIVER <br> *RESULT:* Granted 10/31/2018 HON KENNETH POVODATOR | No |
| 130.00 | 10/31/2018 | D | MOTION TO OPEN JUDGMENT <br> *RESULT:* Granted 11/5/2018 HON KEVIN TIERNEY | No |
| 130.01 | 11/05/2018 | C | ORDER <br> *RESULT:* Granted 11/5/2018 HON KEVIN TIERNEY | No |
| 131.00 | 11/13/2018 | P | NOTICE TO ALL PARTIES | No |
| 132.00 | 11/28/2018 | O | MOTION TO AWARD INTERIM COMMITTEE FEE/EXPENSES <br> *RESULT:* Granted 12/10/2018 HON ROBERT GENUARIO | No |
| 132.01 | 12/10/2018 | C | ORDER <br> *RESULT:* Granted 12/10/2018 HON ROBERT GENUARIO | No |
| 133.00 | 04/26/2019 | P | AFFIDAVIT THAT PARTY IS IN BANKRUPTCY <br> AUTOMATIC STAY IN EFFECT | No |

| Scheduled Court Dates as of 05/24/2019 | | | | |
|---|---|---|---|---|
| FST-CV17-6033200-S - BANK OF AMERICA N.A. v. THOMPSON, STANLEY H, A/K/A STANLEY HUDSON THOMPSON Et Al | | | | |
| **#** | **Date** | **Time** | **Event Description** | **Status** |
| | | | No Events Scheduled | |

Judicial ADR events may be heard in a court that is different from the court where the case is filed.  To check location information about an ADR event, select the **Notices** tab on the top of the case detail page.

Matters that appear on the Short Calendar and Family Support Magistrate Calendar are shown as scheduled court events on this page. The date displayed on this page is the date of the calendar.

All matters on a family support magistrate calendar are presumed ready to go forward.

The status of a Short Calendar matter is not displayed because it is determined by markings made by the parties as required by the calendar notices and the civil or family standing orders. Markings made electronically can be viewed by those who have electronic access through the Markings History link on the Civil/Family Menu in E-Services. Markings made by telephone can only be obtained through the clerk's office. If more than one motion is on a single short calendar, the calendar will be listed once on this page. You can see more information on matters appearing on Short Calendars and Family Support Magistrate Calendars by going to the Civil/Family Case Look-Up page and Short Calendars By Juris Number or By Court Location.

Periodic changes to terminology that do not affect the status of the case may be made.

This list does not constitute or replace official notice of scheduled court events.

**Disclaimer:** For civil and family cases statewide, case information can be seen on this website for a period of time, from one year to a maximum period of ten years, after the disposition date. If the Connecticut Practice Book Sections 7-10 and 7-11 give a shorter period of time, the case information will be displayed for the shorter period. Under the Federal Violence Against Women Act of 2005, cases for relief from physical abuse, foreign protective orders, and motions that would be likely to publicly reveal the identity or location of a protected party may not be displayed and may be available only at the courts.

Attorneys | Case Look-up | Courts | Directories | EducationalResources | E-Services | FAQ's | Juror Information | News & Updates | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2019, State of Connecticut Judicial Branch

Page Created on 5/28/2019 at 6:57:03 PM

# EXHIBIT F

**Fill in this information to identify your case and this filing:**

Debtor 1      Stanley          H.           Thompson
              First Name       Middle Name  Last Name

Debtor 2
(Spouse, if filing)  First Name   Middle Name   Last Name

United States Bankruptcy Court for the:  District of Connecticut

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

   ☐ No. Go to Part 2.
   ☒ Yes. Where is the property?

1.1. **162 Strawberry Hill Avenue**
Street address, if available, or other description

Norwalk          CT      06651
City             State   ZIP Code

Fairfield
County

**What is the property?** Check all that apply.
☒ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**
$390,000.00                                  $390,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
Fee Simple Ownership

☐ Check if this is community property
(see instructions)

If you own or have more than one, list here:

1.2. _____
Street address, if available, or other description

_____

City             State   ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**   **Current value of the portion you own?**
$_____                             $_____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**
_____

☐ Check if this is community property
(see instructions)

EXHIBIT G



**Bank of America**

Customer Service Department
PO Box 31785
Tampa, FL 33631-3785

 =Redacted Information

**Date:** 05/15/2019
**Loan No:**
**Property Address:**

STANLEY H THOMPSON
162 STRAWBERRY HILL AVE
NORWALK, CT 06851

162 STRAWBERRY HILL AVENUE
NORWALK, CT 06851

## We've enclosed your home loan history statement with transaction details.

As you requested, enclosed is your statement that provides the following:
- Payments we received from you
- Servicing expenses we paid to third parties
- Tax and insurance payments we paid on your behalf
- Late charges assessed and paid

## Questions?

We appreciate the opportunity to serve your home loan needs. For general account information, you can visit us online at bankofamerica.com.

**Bank of America**
**Home Loans**

Page 3

| Loan Number: | ████████ |
| Statement Period: | 05/2004 - 05/2019 |
| Date Prepared: | 05/15/2019 |

Property Address:
162 STRAWBERRY HILL AVENUE
NORWALK, CT 06851

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Beginning Balance** | | | **225,250.00** | | **2,870.32** | | | | **.00** |
| 06/08/2004 | REGULAR PAYMENT | 1,792.89 | 06/2004 | 235.18 225,014.82 | 1,079.32 | 478.39 3,348.71 | .00 | .00 | .00 .00 | .00 .00 |
| 07/06/2004 | REGULAR PAYMENT | 1,782.89 | 07/2004 | 236.30 224,778.52 | 1,078.20 | 468.39 3,817.10 | .00 | .00 | .00 .00 | .00 .00 |
| 07/22/2004 | CITY TAX PMT | -2,583.29 | 07/2004 | .00 224,778.52 | .00 | -2,583.29 1,233.81 | .00 | .00 | .00 .00 | .00 .00 |
| 08/05/2004 | REGULAR PAYMENT | 1,792.89 | 08/2004 | 237.44 224,541.08 | 1,077.06 | 478.39 1,712.20 | .00 | .00 | .00 .00 | .00 .00 |
| 09/03/2004 | REGULAR PAYMENT | 1,792.89 | 09/2004 | 238.57 224,302.51 | 1,075.93 | 478.39 2,190.59 | .00 | .00 | .00 .00 | .00 .00 |
| 09/23/2004 | HAZARD INS PMT | -1,016.00 | 09/2004 | .00 224,302.51 | .00 | -1,016.00 1,174.59 | .00 | .00 | .00 .00 | .00 .00 |
| 10/04/2004 | REGULAR PAYMENT | 1,792.89 | 10/2004 | 239.72 224,062.79 | 1,074.78 | 478.39 1,652.98 | .00 | .00 | .00 .00 | .00 .00 |
| 11/01/2004 | REGULAR PAYMENT | 1,792.89 | 11/2004 | 240.87 223,821.92 | 1,073.63 | 478.39 2,131.37 | .00 | .00 | .00 .00 | .00 .00 |
| 12/07/2004 | REGULAR PAYMENT | 1,867.04 | 12/2004 | 242.02 223,579.90 | 1,072.48 | 552.54 2,683.91 | .00 | .00 | .00 .00 | .00 .00 |
| 12/31/2004 | INTEREST ON ESC | 25.79 | 12/2004 | .00 223,579.90 | .00 | 25.79 2,709.70 | .00 | .00 | .00 .00 | .00 .00 |
| 01/06/2005 | REGULAR PAYMENT | 1,867.04 | 01/2005 | 243.18 223,336.72 | 1,071.32 | 552.54 3,262.24 | .00 | .00 | .00 .00 | .00 .00 |
| 01/06/2005 | CITY TAX PMT | -2,583.29 | 01/2005 | .00 223,336.72 | .00 | -2,583.29 678.95 | .00 | .00 | .00 .00 | .00 .00 |
| 02/03/2005 | REGULAR PAYMENT | 1,867.04 | 02/2005 | 244.34 223,092.38 | 1,070.16 | 552.54 1,231.49 | .00 | .00 | .00 .00 | .00 .00 |
| 03/07/2005 | REGULAR PAYMENT | 1,867.04 | 03/2005 | 245.52 222,846.86 | 1,068.98 | 552.54 1,784.03 | .00 | .00 | .00 .00 | .00 .00 |
| 04/04/2005 | REGULAR PAYMENT | 1,867.04 | 04/2005 | 246.69 222,600.17 | 1,067.81 | 552.54 2,336.57 | .00 | .00 | .00 .00 | .00 .00 |
| 05/06/2005 | REGULAR PAYMENT | 1,867.04 | 05/2005 | 247.87 222,352.30 | 1,066.63 | 552.54 2,889.11 | .00 | .00 | .00 .00 | .00 .00 |

**Bank of America**
**Home Loans**

Page 4

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/06/2005 | REGULAR PAYMENT | 1,867.04 | 06/2005 | 249.06 221,103.24 | 1,065.44 | 552.54 3,441.65 | .00 | .00 | .00 .00 | .00 .00 |
| 07/05/2005 | REGULAR PAYMENT | 1,867.04 | 07/2005 | 250.26 221,652.98 | 1,064.24 | 552.54 3,994.19 | .00 | .00 | .00 .00 | .00 .00 |
| 07/12/2005 | CITY TAX PMT | -2,710.14 | 07/2005 | .00 221,852.98 | .00 | -2,710.14 1,284.05 | .00 | .00 | .00 .00 | .00 .00 |
| 08/05/2005 | REGULAR PAYMENT | 1,867.04 | 08/2005 | 251.45 221,601.53 | 1,063.05 | 552.54 1,836.59 | .00 | .00 | .00 .00 | .00 .00 |
| 09/06/2005 | REGULAR PAYMENT | 1,867.04 | 09/2005 | 252.66 221,348.87 | 1,061.84 | 552.54 2,389.13 | .00 | .00 | .00 .00 | .00 .00 |
| 09/21/2005 | HAZARD INS PMT | -1,137.00 | 09/2005 | .00 221,348.87 | .00 | -1,137.00 1,252.13 | .00 | .00 | .00 .00 | .00 .00 |
| 10/05/2005 | REGULAR PAYMENT | 1,867.04 | 10/2005 | 253.87 221,095.00 | 1,060.63 | 552.54 1,804.67 | .00 | .00 | .00 .00 | .00 .00 |
| 11/03/2005 | REGULAR PAYMENT | 1,867.04 | 11/2005 | 255.09 220,839.91 | 1,059.41 | 552.54 2,357.21 | .00 | .00 | .00 .00 | .00 .00 |
| 12/05/2005 | REGULAR PAYMENT | 1,889.99 | 12/2005 | 256.31 220,583.60 | 1,058.19 | 575.49 2,932.70 | .00 | .00 | .00 .00 | .00 .00 |
| 12/30/2005 | INTEREST ON ESC | 31.38 | 12/2005 | .00 220,583.60 | .00 | 31.38 2,964.08 | .00 | .00 | .00 .00 | .00 .00 |
| 01/03/2006 | REGULAR PAYMENT | 1,889.99 | 01/2006 | 257.54 220,326.06 | 1,056.96 | 575.49 3,539.57 | .00 | .00 | .00 .00 | .00 .00 |
| 01/06/2006 | CITY TAX PMT | -2,710.14 | 01/2006 | .00 220,326.06 | .00 | -2,710.14 829.43 | .00 | .00 | .00 .00 | .00 .00 |
| 02/03/2006 | REGULAR PAYMENT | 1,889.99 | 02/2006 | 258.77 220,067.29 | 1,055.73 | 575.49 1,404.92 | .00 | .00 | .00 .00 | .00 .00 |
| 03/07/2006 | REGULAR PAYMENT | 1,889.99 | 03/2006 | 260.01 219,807.28 | 1,054.49 | 575.49 1,980.41 | .00 | .00 | .00 .00 | .00 .00 |
| 04/07/2006 | REGULAR PAYMENT | 1,889.99 | 04/2006 | 261.26 219,546.02 | 1,053.24 | 575.49 2,555.90 | .00 | .00 | .00 .00 | .00 .00 |
| 05/04/2006 | REGULAR PAYMENT | 1,889.99 | 05/2006 | 262.51 219,283.51 | 1,051.99 | 575.49 3,131.39 | .00 | .00 | .00 .00 | .00 .00 |
| 06/05/2006 | REGULAR PAYMENT | 1,889.99 | 06/2006 | 263.77 219,019.74 | 1,050.73 | 575.49 3,706.88 | .00 | .00 | .00 .00 | .00 .00 |
| 07/10/2006 | REGULAR PAYMENT | 1,889.99 | 07/2006 | 265.03 218,754.71 | 1,049.47 | 575.49 4,282.37 | .00 | .00 | .00 .00 | .00 .00 |


Bank of America
Home Loans

Page 5

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/14/2006 | CITY TAX PMT | -2,793.40 | 07/2006 | .00 218,754.71 | .00 | -2,793.40 1,488.97 | .00 | .00 | .00 .00 | .00 .00 |
| 08/04/2006 | REGULAR PAYMENT | 1,889.99 | 08/2006 | 266.30 218,488.41 | 1,048.20 | 575.49 2,064.46 | .00 | .00 | .00 .00 | .00 .00 |
| 08/31/2006 | REGULAR PAYMENT | 1,889.99 | 09/2006 | 267.58 218,220.83 | 1,046.92 | 575.49 2,639.95 | .00 | .00 | .00 .00 | .00 .00 |
| 09/26/2006 | HAZARD INS PMT | -1,246.00 | 09/2006 | .00 218,220.83 | .00 | -1,246.00 1,393.95 | .00 | .00 | .00 .00 | .00 .00 |
| 10/05/2006 | REGULAR PAYMENT | 1,889.99 | 10/2006 | 268.86 217,951.97 | 1,045.64 | 575.49 1,969.44 | .00 | .00 | .00 .00 | .00 .00 |
| 11/07/2006 | REGULAR PAYMENT | 1,889.99 | 11/2006 | 270.15 217,681.82 | 1,044.35 | 575.49 2,544.93 | .00 | .00 | .00 .00 | .00 .00 |
| 12/05/2006 | REGULAR PAYMENT | 1,904.23 | 12/2006 | 271.44 217,410.38 | 1,043.06 | 589.73 3,134.66 | .00 | .00 | .00 .00 | .00 .00 |
| 12/29/2006 | INTEREST ON ESC | 34.98 | 12/2006 | .00 217,410.38 | .00 | 34.98 3,169.64 | .00 | .00 | .00 .00 | .00 .00 |
| 01/05/2007 | REGULAR PAYMENT | 1,904.23 | 01/2007 | 272.74 217,137.64 | 1,041.76 | 589.73 3,759.37 | .00 | .00 | .00 .00 | .00 .00 |
| 01/22/2007 | CITY TAX PMT | -2,793.40 | 01/2007 | .00 217,137.64 | .00 | -2,793.40 965.97 | .00 | .00 | .00 .00 | .00 .00 |
| 02/06/2007 | REGULAR PAYMENT | 1,904.23 | 02/2007 | 274.05 216,863.59 | 1,040.45 | 589.73 1,555.70 | .00 | .00 | .00 .00 | .00 .00 |
| 03/06/2007 | REGULAR PAYMENT | 1,904.23 | 03/2007 | 275.36 216,588.23 | 1,039.14 | 589.73 2,145.43 | .00 | .00 | .00 .00 | .00 .00 |
| 04/09/2007 | REGULAR PAYMENT | 1,904.23 | 04/2007 | 276.68 216,311.55 | 1,037.82 | 589.73 2,735.16 | .00 | .00 | .00 .00 | .00 .00 |
| 05/07/2007 | REGULAR PAYMENT | 1,904.23 | 05/2007 | 278.01 216,033.54 | 1,036.49 | 589.73 3,324.89 | .00 | .00 | .00 .00 | .00 .00 |
| 06/07/2007 | REGULAR PAYMENT | 1,904.23 | 06/2007 | 279.34 215,754.20 | 1,035.16 | 589.73 3,914.62 | .00 | .00 | .00 .00 | .00 .00 |
| 07/06/2007 | REGULAR PAYMENT | 1,904.23 | 07/2007 | 280.68 215,473.52 | 1,033.82 | 589.73 4,504.35 | .00 | .00 | .00 .00 | .00 .00 |
| 07/25/2007 | CITY TAX PMT | -2,887.30 | 07/2007 | .00 215,473.52 | 00 | -2,887.30 1,617.05 | .00 | .00 | .00 .00 | .00 .00 |
| 08/06/2007 | REGULAR PAYMENT | 1,904.23 | 08/2007 | 282.02 215,191.50 | 1,032 48 | 589.73 2,206.76 | .00 | .00 | .00 .00 | .00 .00 |

**Bank of America**
**Home Loans**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 08/31/2007 | REGULAR PAYMENT | 1,904.23 | 09/2007 | 283.37<br>214,908.13 | 1,031.13 | 589.73<br>2,796.51 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/25/2007 | HAZARD INS PMT | -1,628.00 | 09/2007 | .00<br>214,908.13 | .00 | -1,628.00<br>1,168.51 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/05/2007 | REGULAR PAYMENT | 1,904.23 | 10/2007 | 284.73<br>214,623.40 | 1,029.77 | 589.73<br>1,758.24 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/05/2007 | REGULAR PAYMENT | 1,904.23 | 11/2007 | 286.10<br>214,337.30 | 1,028.40 | 589.73<br>2,347.97 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/07/2007 | REGULAR PAYMENT | 1,975.91 | 12/2007 | 287.47<br>214,049.83 | 1,027.03 | 661.41<br>3,009.38 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/31/2007 | INTEREST ON ESC | 38.94 | 12/2007 | .00<br>214,049.83 | .00 | 38.94<br>3,048.32 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/02/2008 | REGULAR PAYMENT | 1,975.91 | 01/2008 | 288.84<br>213,760.99 | 1,025.66 | 661.41<br>3,709.73 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/28/2008 | CITY TAX PMT | -2,887.30 | 01/2008 | .00<br>213,760.99 | .00 | -2,887.30<br>822.43 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/05/2008 | REGULAR PAYMENT | 1,975.91 | 02/2008 | 290.23<br>213,470.76 | 1,024.27 | 661.41<br>1,483.84 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/03/2008 | REGULAR PAYMENT | 1,975.91 | 03/2008 | 291.62<br>213,179.14 | 1,022.88 | 661.41<br>2,145.25 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/04/2008 | REGULAR PAYMENT | 1,975.91 | 04/2008 | 293.02<br>212,886.12 | 1,021.48 | 661.41<br>2,806.66 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/05/2008 | REGULAR PAYMENT | 1,975.91 | 05/2008 | 294.42<br>212,591.70 | 1,020.08 | 661.41<br>3,468.07 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/03/2008 | REGULAR PAYMENT | 1,975.91 | 06/2008 | 295.83<br>212,295.87 | 1,018.67 | 661.41<br>4,129.48 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/07/2008 | REGULAR PAYMENT | 1,975.91 | 07/2008 | 297.25<br>211,998.62 | 1,017.25 | 661.41<br>4,790.89 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/25/2008 | CITY TAX PMT | -2,997.61 | 07/2008 | .00<br>211,998.62 | .00 | -2,997.61<br>1,793.28 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/05/2008 | REGULAR PAYMENT | 1,975.91 | 08/2008 | 298.67<br>211,699.95 | 1,015.83 | 661.41<br>2,454.69 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/05/2008 | MISC. POSTING | 200.00 | 08/2008 | 200.00<br>211,499.95 | .00 | .00<br>2,454.69 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/02/2008 | REGULAR PAYMENT | 1,975.91 | 09/2008 | 300.94<br>211,199.01 | 1,013.56 | 661.41<br>3,116.10 | .00 | .00 | .00<br>.00 | .00<br>.00 |



**Bank of America**
**Home Loans**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/02/2008 | MISC. POSTING | 204.09 | 09/2008 | 204.09 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 210,994.92 | | 3,116.10 | | | .00 | .00 |
| 09/17/2008 | HAZARD INS PMT | -1,618.00 | 09/2008 | .00 | .00 | -1,618.00 | .00 | .00 | .00 | .00 |
| | | | | 210,994.92 | | 1,498.10 | | | .00 | .00 |
| 10/06/2008 | REGULAR PAYMENT | 1,975.91 | 10/2008 | 303.45 | 1,011.05 | 661.41 | .00 | .00 | .00 | .00 |
| | | | | 210,691.47 | | 2,159.51 | | | .00 | .00 |
| 10/06/2008 | MISC. POSTING | 24.09 | 10/2008 | 24.09 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 210,667.38 | | 2,159.51 | | | .00 | .00 |
| 11/03/2008 | REGULAR PAYMENT | 1,975.91 | 11/2008 | 305.03 | 1,009.47 | 661.41 | .00 | .00 | .00 | .00 |
| | | | | 210,362.35 | | 2,820.92 | | | .00 | .00 |
| 11/03/2008 | MISC. POSTING | 24.09 | 11/2008 | 24.09 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 210,338.26 | | 2,820.92 | | | .00 | .00 |
| 12/04/2008 | REGULAR PAYMENT | 1,963.24 | 12/2008 | 306.62 | 1,007.88 | 648.74 | .00 | .00 | .00 | .00 |
| | | | | 210,031.64 | | 3,469.66 | | | .00 | .00 |
| 12/04/2008 | MISC. POSTING | 136.76 | 12/2008 | 136.76 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 209,894.88 | | 3,469.66 | | | .00 | .00 |
| 12/31/2008 | INTEREST ON ESC | 42.63 | 12/2008 | .00 | .00 | 42.63 | .00 | .00 | .00 | .00 |
| | | | | 209,894.88 | | 3,512.29 | | | .00 | .00 |
| 01/06/2009 | REGULAR PAYMENT | 1,963.24 | 01/2009 | 308.69 | 1,005.81 | 648.74 | .00 | .00 | .00 | .00 |
| | | | | 209,586.19 | | 4,161.03 | | | .00 | .00 |
| 01/06/2009 | MISC. POSTING | 236.76 | 01/2009 | 236.76 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 209,349.43 | | 4,161.03 | | | .00 | .00 |
| 01/21/2009 | CITY TAX PMT | -2,997.61 | 01/2009 | .00 | .00 | -2,997.61 | .00 | .00 | .00 | .00 |
| | | | | 209,349.43 | | 1,163.42 | | | .00 | .00 |
| 02/06/2009 | REGULAR PAYMENT | 1,963.24 | 02/2009 | 311.18 | 1,003.32 | 648.74 | .00 | .00 | .00 | .00 |
| | | | | 209,038.25 | | 1,812.16 | | | .00 | .00 |
| 02/06/2009 | MISC. POSTING | 86.76 | 02/2009 | 86.76 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 208,951.49 | | 1,812.16 | | | .00 | .00 |
| 03/05/2009 | REGULAR PAYMENT | 1,963.24 | 03/2009 | 313.22 | 1,001.28 | 648.74 | .00 | .00 | .00 | .00 |
| | | | | 208,638.27 | | 2,460.90 | | | .00 | .00 |
| 03/05/2009 | MISC. POSTING | 36.76 | 03/2009 | 36.76 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 208,601.51 | | 2,460.90 | | | .00 | .00 |
| 04/06/2009 | REGULAR PAYMENT | 1,963.24 | 04/2009 | 314.92 | 999.58 | 648.74 | .00 | .00 | .00 | .00 |
| | | | | 208,286.59 | | 3,109.64 | | | .00 | .00 |
| 04/06/2009 | MISC. POSTING | 36.76 | 04/2009 | 36.76 | .00 | .00 | .00 | .00 | .00 | .00 |
| | | | | 208,249.83 | | 3,109.64 | | | .00 | .00 |

**Bank of America**
**Home Loans**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/06/2009 | REGULAR PAYMENT | 1,963.24 | 05/2009 | 316.61<br>207,933.22 | 997.89 | 648.74<br>3,758.38 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 05/06/2009 | MISC. POSTING | 36.76 | 05/2009 | 36.76<br>207,896.46 | .00 | .00<br>3,758.38 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/04/2009 | REGULAR PAYMENT | 1,963.24 | 06/2009 | 318.30<br>207,578.16 | 996.20 | 648.74<br>4,407.12 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/04/2009 | MISC. POSTING | 36.76 | 06/2009 | 36.76<br>207,541.40 | .00 | .00<br>4,407.12 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/06/2009 | REGULAR PAYMENT | 1,963.24 | 07/2009 | 320.02<br>207,221.38 | 994.48 | 648.74<br>5,055.86 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/06/2009 | MISC. POSTING | 226.76 | 07/2009 | 226.76<br>206,994.62 | .00 | .00<br>5,055.86 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/21/2009 | CITY TAX PMT | -3,111.06 | 07/2009 | .00<br>206,994.62 | .00 | -3,111.06<br>1,944.80 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/05/2009 | REGULAR PAYMENT | 1,963.24 | 08/2009 | 322.47<br>206,672.15 | 992.03 | 648.74<br>2,593.54 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/05/2009 | MISC. POSTING | 36.76 | 08/2009 | 36.76<br>206,635.39 | .00 | .00<br>2,593.54 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/02/2009 | REGULAR PAYMENT | 1,963.24 | 09/2009 | 324.35<br>206,311.04 | 990.15 | 648.74<br>3,242.28 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/02/2009 | MISC. POSTING | 36.76 | 09/2009 | 36.76<br>206,274.28 | .00 | .00<br>3,242.28 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/01/2009 | HAZARD INS PMT | -1,624.00 | 09/2009 | .00<br>206,274.28 | .00 | -1,624.00<br>1,618.28 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/09/2009 | REGULAR PAYMENT | 1,963.24 | 10/2009 | 326.10<br>205,948.18 | 988.40 | 648.74<br>2,267.02 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/09/2009 | MISC. POSTING | 36.76 | 10/2009 | 36.76<br>205,911.42 | .00 | .00<br>2,267.02 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/06/2009 | MISC. POSTING | 117.20 | 10/2009 | .00<br>205,911.42 | .00 | .00<br>2,267.02 | .00 | .00 | .00<br>.00 | 117.20<br>117.20 |
| 11/06/2009 | REGULAR PAYMENT | 1,982.80 | 11/2009 | 327.82<br>205,583.60 | 986.68 | 668.30<br>2,935.32 | .00 | .00 | .00<br>.00 | .00<br>117.20 |
| 11/09/2009 | MISC. POSTING | 117.20 | 11/2009 | 117.20<br>205,466.40 | .00 | .00<br>2,935.32 | .00 | .00 | .00<br>.00 | 117.20<br>117.20 |
| 11/09/2009 | MISC. POSTING | -117.20 | 11/2009 | .00<br>205,466.40 | .00 | .00<br>2,935.32 | .00 | .00 | .00<br>.00 | -117.20<br>.00 |

**Bank of America**
**Home Loans**

Page 9

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/08/2009 | REGULAR PAYMENT | 1,982.80 | 12/2009 | 329.88 205,136.52 | 984.62 | 668.30 3,603.62 | .00 | .00 | .00 .00 | .00 .00 |
| 12/08/2009 | MISC. POSTING | 117.20 | 12/2009 | 117.20 205,019.32 | .00 | .00 3,603.62 | .00 | .00 | .00 .00 | .00 .00 |
| 12/31/2009 | INTEREST ON ESC | 45.12 | 12/2009 | .00 205,019.32 | .00 | 45.12 3,648.74 | .00 | .00 | .00 .00 | .00 .00 |
| 01/08/2010 | REGULAR PAYMENT | 1,982.80 | 01/2010 | 332.03 204,687.29 | 982.47 | 668.30 4,317.04 | .00 | .00 | .00 .00 | .00 .00 |
| 01/08/2010 | MISC. POSTING | 117.20 | 01/2010 | 117.20 204,570.09 | .00 | .00 4,317.04 | .00 | .00 | .00 .00 | .00 .00 |
| 01/20/2010 | CITY TAX PMT | -3,111.06 | 01/2010 | .00 204,570.09 | .00 | -3,111.06 1,205.98 | .00 | .00 | .00 .00 | .00 .00 |
| 02/05/2010 | REGULAR PAYMENT | 1,982.80 | 02/2010 | 334.17 204,235.92 | 980.33 | 668.30 1,874.28 | .00 | .00 | .00 .00 | .00 .00 |
| 02/05/2010 | MISC. POSTING | 117.20 | 02/2010 | 117.20 204,118.72 | .00 | .00 1,874.28 | .00 | .00 | .00 .00 | .00 .00 |
| 03/05/2010 | REGULAR PAYMENT | 1,982.80 | 03/2010 | 336.40 203,782.32 | 978.10 | 668.30 2,542.58 | .00 | .00 | .00 .00 | .00 .00 |
| 03/05/2010 | MISC. POSTING | 117.20 | 03/2010 | 117.20 203,665.12 | .00 | .00 2,542.58 | .00 | .00 | .00 .00 | .00 .00 |
| 04/08/2010 | REGULAR PAYMENT | 1,982.80 | 04/2010 | 338.56 203,326.56 | 975.94 | 668.30 3,210.88 | .00 | .00 | .00 .00 | .00 .00 |
| 04/08/2010 | MISC. POSTING | 117.20 | 04/2010 | 117.20 203,209.36 | .00 | .00 3,210.88 | .00 | .00 | .00 .00 | .00 .00 |
| 05/05/2010 | REGULAR PAYMENT | 1,982.80 | 05/2010 | 340.75 202,868.61 | 973.75 | 668.30 3,879.18 | .00 | .00 | .00 .00 | .00 .00 |
| 05/05/2010 | MISC. POSTING | 117.20 | 05/2010 | 117.20 202,751.41 | .00 | .00 3,879.18 | .00 | .00 | .00 .00 | .00 .00 |
| 06/03/2010 | REGULAR PAYMENT | 1,982.80 | 06/2010 | 342.92 202,408.49 | 971.58 | 668.30 4,547.48 | .00 | .00 | .00 .00 | .00 .00 |
| 06/03/2010 | MISC. POSTING | 117.20 | 06/2010 | 117.20 202,291.29 | .00 | .00 4,547.48 | .00 | .00 | .00 .00 | .00 .00 |
| 07/02/2010 | REGULAR PAYMENT | 1,982.80 | 07/2010 | 345.17 201,946.12 | 969.33 | 668.30 5,215.78 | .00 | .00 | .00 .00 | .00 .00 |
| 07/02/2010 | MISC. POSTING | 117.20 | 07/2010 | 117.20 201,828.92 | .00 | .00 5,215.78 | .00 | .00 | .00 .00 | .00 .00 |



**Bank of America**

**Home Loans**

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/21/2010 | CITY TAX PMT | -3,229.91 | 07/2010 | .00 / 201,828.92 | .00 | -3,229.91 / 1,985.87 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/02/2010 | REGULAR PAYMENT | 1,982.80 | 08/2010 | 347.38 / 201,481.54 | 967.12 | 668.30 / 2,654.17 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/01/2010 | REGULAR PAYMENT | 1,982.80 | 09/2010 | 349.07 / 201,132.47 | 965.43 | 668.30 / 3,322.47 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/01/2010 | MISC. POSTING | 17.20 | 09/2010 | 17.20 / 201,115.27 | .00 | .00 / 3,322.47 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/29/2010 | HAZARD INS PMT | -1,624.00 | 09/2010 | .00 / 201,115.27 | .00 | -1,624.00 / 1,698.47 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/01/2010 | REGULAR PAYMENT | 1,982.80 | 10/2010 | 350.82 / 200,764.45 | 963.68 | 668.30 / 2,366.77 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/01/2010 | MISC. POSTING | 67.20 | 10/2010 | 67.20 / 200,697.25 | .00 | .00 / 2,366.77 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/01/2010 | REGULAR PAYMENT | 2,003.49 | 11/2010 | 352.83 / 200,344.42 | 961.67 | 688.99 / 3,055.76 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/01/2010 | MISC. POSTING | 48.00 | 11/2010 | 48.00 / 200,296.42 | .00 | .00 / 3,055.76 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/01/2010 | REGULAR PAYMENT | 2,003.49 | 12/2010 | 354.75 / 199,941.67 | 959.75 | 688.99 / 3,744.75 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/31/2010 | INTEREST ON ESC | 47.12 | 12/2010 | .00 / 199,941.67 | .00 | 47.12 / 3,791.87 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/03/2011 | REGULAR PAYMENT | 2,003.49 | 01/2011 | 356.45 / 199,585.22 | 958.05 | 688.99 / 4,480.86 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/13/2011 | CITY TAX PMT | -3,229.91 | 01/2011 | .00 / 199,585.22 | .00 | -3,229.91 / 1,250.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/01/2011 | REGULAR PAYMENT | 2,003.49 | 02/2011 | 358.15 / 199,227.07 | 956.35 | 688.99 / 1,939.94 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/01/2011 | REGULAR PAYMENT | 2,003.49 | 03/2011 | 359.87 / 198,867.20 | 954.63 | 688.99 / 2,628.93 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/01/2011 | MISC. POSTING | 1.51 | 03/2011 | 1.51 / 198,865.69 | .00 | .00 / 2,628.93 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/04/2011 | REGULAR PAYMENT | 2,003.49 | 04/2011 | 361.60 / 198,504.09 | 952.90 | 688.99 / 3,317.92 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/04/2011 | MISC. POSTING | 1.51 | 04/2011 | 1.51 / 198,502.58 | .00 | .00 / 3,317.92 | .00 | .00 | .00 / .00 | .00 / .00 |

**Bank of America**
**Home Loans**

Page 11

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 05/09/2011 | REGULAR PAYMENT | 2,003.49 | 05/2011 | 363.34 / 198,139.24 | 951.16 | 688.99 / 4,006.91 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/06/2011 | REGULAR PAYMENT | 2,003.49 | 06/2011 | 365.08 / 197,774.16 | 949.42 | 688.90 / 4,695.90 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/06/2011 | MISC. POSTING | 6.51 | 06/2011 | 6.51 / 197,767.65 | .00 | .00 / 4,695.90 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/08/2011 | REGULAR PAYMENT | 2,003.49 | 07/2011 | 366.86 / 197,400.79 | 947.64 | 688.99 / 5,384.89 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/12/2011 | CITY TAX PMT | -3,275.15 | 07/2011 | .00 / 197,400.79 | .00 | -3,275.15 / 2,109.74 | .00 | .00 | .00 / .00 | .00 / .00 |
| 08/04/2011 | REGULAR PAYMENT | 2,003.49 | 08/2011 | 368.62 / 197,032.17 | 945.88 | 688.99 / 2,798.73 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/01/2011 | REGULAR PAYMENT | 2,003.49 | 09/2011 | 370.39 / 196,661.78 | 944.11 | 688.99 / 3,487.72 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/01/2011 | MISC. POSTING | 6.51 | 09/2011 | 6.51 / 196,655.27 | .00 | .00 / 3,487.72 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/19/2011 | HAZARD INS PMT | -1,680.00 | 09/2011 | .00 / 196,655.27 | .00 | -1,680.00 / 1,807.72 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/03/2011 | REGULAR PAYMENT | 2,003.49 | 10/2011 | 372.19 / 196,283.08 | 942.31 | 688.99 / 2,496.71 | .00 | .00 | .00 / .00 | .00 / .00 |
| 10/03/2011 | MISC. POSTING | 6.51 | 10/2011 | 6.51 / 196,276.57 | .00 | .00 / 2,496.71 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/16/2011 | REGULAR PAYMENT | 1,998.67 | 11/2011 | 374.01 / 195,902.56 | 940.49 | 684.17 / 3,180.88 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/16/2011 | MISC. POSTING | 12.00 | 11/2011 | 12.00 / 195,890.56 | .00 | .00 / 3,180.88 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/02/2011 | REGULAR PAYMENT | 1,998.67 | 12/2011 | 375.83 / 195,514.73 | 938.67 | 684.17 / 3,865.05 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/30/2011 | INTEREST ON ESC | 45.68 | 12/2011 | .00 / 195,514.73 | .00 | 45.68 / 3,910.73 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/04/2012 | CITY TAX PMT | -3,275.15 | 12/2011 | .00 / 195,514.73 | .00 | -3,275.15 / 635.58 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/17/2012 | REGULAR PAYMENT | 1,998.67 | 01/2012 | 377.66 / 195,137.07 | 936.84 | 684.17 / 1,319.75 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/16/2012 | REGULAR PAYMENT | 1,998.67 | 02/2012 | 379.47 / 194,757.60 | 935.03 | 684.17 / 2,003.92 | .00 | .00 | .00 / .00 | .00 / .00 |


**Bank of America**
**Home Loans**

Page 12

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/15/2012 | REGULAR PAYMENT | 1,998.67 | 03/2012 | 381.29 / 194,376.31 | 933.21 | 684.17 / 2,688.09 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/16/2012 | REGULAR PAYMENT | 1,998.67 | 04/2012 | 383.11 / 193,993.20 | 931.39 | 684.17 / 3,372.26 | .00 | .00 | .00 / .00 | .00 / .00 |
| 05/15/2012 | REGULAR PAYMENT | 1,998.67 | 05/2012 | 384.95 / 193,608.25 | 929.55 | 684.17 / 4,056.43 | .00 | .00 | .00 / .00 | .00 / .00 |
| 06/27/2012 | REGULAR PAYMENT | 2,064.40 | 06/2012 | 386.79 / 193,221.46 | 927.71 | 684.17 / 4,740.60 | .00 | .00 | 65.73 / .00 | .00 / .00 |
| 07/02/2012 | CITY TAX PMT | -3,367.97 | 06/2012 | .00 / 193,221.46 | .00 | -3,367.97 / 1,372.63 | .00 | .00 | .00 / .00 | .00 / .00 |
| 07/27/2012 | REGULAR PAYMENT | 2,064.40 | 07/2012 | 388.65 / 192,832.81 | 925.85 | 684.17 / 2,056.80 | .00 | .00 | 65.73 / .00 | .00 / .00 |
| 08/09/2012 | REGULAR PAYMENT | 1,998.67 | 08/2012 | 390.51 / 192,442.30 | 923.99 | 684.17 / 2,740.97 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/17/2012 | HAZARD INS PMT | -1,851.00 | 08/2012 | .00 / 192,442.30 | .00 | -1,851.00 / 889.97 | .00 | .00 | .00 / .00 | .00 / .00 |
| 09/27/2012 | REGULAR PAYMENT | 2,064.40 | 09/2012 | 392.38 / 192,049.92 | 922.12 | 684.17 / 1,574.14 | .00 | .00 | 65.73 / .00 | .00 / .00 |
| 10/16/2012 | REGULAR PAYMENT | 1,998.67 | 10/2012 | 394.26 / 191,655.66 | 920.24 | 684.17 / 2,258.31 | .00 | .00 | .00 / .00 | .00 / .00 |
| 11/14/2012 | REGULAR PAYMENT | 2,062.44 | 11/2012 | 396.15 / 191,259.51 | 918.35 | 747.94 / 3,006.25 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/19/2012 | REGULAR PAYMENT | 2,062.44 | 12/2012 | 398.05 / 190,861.46 | 916.45 | 747.94 / 3,754.19 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/19/2012 | MISC. POSTING | 25.00 | 12/2012 | 25.00 / 190,836.46 | .00 | .00 / 3,754.19 | .00 | .00 | .00 / .00 | .00 / .00 |
| 12/31/2012 | INTEREST ON ESC | 37.98 | 12/2012 | .00 / 190,836.46 | .00 | 37.98 / 3,792.17 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/03/2013 | CITY TAX PMT | -3,367.97 | 12/2012 | .00 / 190,836.46 | .00 | -3,367.97 / 424.20 | .00 | .00 | .00 / .00 | .00 / .00 |
| 01/16/2013 | REGULAR PAYMENT | 2,062.44 | 01/2013 | 400.00 / 190,436.46 | 914.50 | 747.94 / 1,172.14 | .00 | .00 | .00 / .00 | .00 / .00 |
| 02/15/2013 | REGULAR PAYMENT | 2,062.44 | 02/2013 | 401.99 / 190,034.47 | 912.51 | 747.94 / 1,920.08 | .00 | .00 | .00 / .00 | .00 / .00 |
| 03/18/2013 | Assessed Late Chg | 65.72 | 03/2013 | .00 / 190,034.47 | .00 | .00 / 1,920.08 | .00 | .00 | .00 / -65.72 | .00 / .00 |



**Bank of America**
**Home Loans**

Page 13

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/28/2013 | REGULAR PAYMENT | 2,062.44 | 03/2013 | 403.92<br>189,630.55 | 910.58 | 747.94<br>2,668.02 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 03/28/2013 | MISC. POSTING | 65.72 | 03/2013 | .00<br>189,630.55 | .00 | .00<br>2,668.02 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 04/16/2013 | Assessed Late Chg | 65.72 | 04/2013 | .00<br>189,630.55 | .00 | .00<br>2,668.02 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 05/07/2013 | REGULAR PAYMENT | 2,128.16 | 04/2013 | 405.85<br>189,224.70 | 908.55 | 747.94<br>3,415.96 | .00 | .00 | .00<br>-65.72 | 65.72<br>65.72 |
| 05/16/2013 | MISC. POSTING | -65.72 | 04/2013 | .00<br>189,224.70 | .00 | .00<br>3,415.96 | .00 | .00 | .00<br>-65.72 | -65.72<br>.00 |
| 05/16/2013 | REGULAR PAYMENT | 2,062.44 | 05/2013 | 407.80<br>188,816.90 | 906.70 | 747.94<br>4,163.90 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 05/16/2013 | MISC. POSTING | 65.72 | 05/2013 | .00<br>188,816.90 | .00 | .00<br>4,163.90 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 06/17/2013 | REGULAR PAYMENT | 2,062.44 | 06/2013 | 409.75<br>188,407.15 | 904.75 | 747.94<br>4,911.84 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/15/2013 | CITY TAX PMT | -3,490.18 | 06/2013 | .00<br>188,407.15 | .00 | -3,490.18<br>1,421.66 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/16/2013 | REGULAR PAYMENT | 2,062.44 | 07/2013 | 411.72<br>187,995.43 | 902.78 | 747.94<br>2,169.60 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/09/2013 | REGULAR PAYMENT | 2,062.44 | 08/2013 | 413.69<br>187,581.74 | 900.81 | 747.94<br>2,917.54 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/16/2013 | REGULAR PAYMENT | 2,062.44 | 09/2013 | 415.67<br>187,166.07 | 898.83 | 747.94<br>3,665.48 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/16/2013 | HAZARD INS PMT | -2,025.00 | 09/2013 | .00<br>187,166.07 | .00 | -2,025.00<br>1,640.48 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/16/2013 | Assessed Late Chg | 65.72 | 10/2013 | .00<br>187,166.07 | .00 | .00<br>1,640.48 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 10/31/2013 | REGULAR PAYMENT | 2,062.44 | 10/2013 | 417.66<br>186,748.41 | 896.84 | 747.94<br>2,388.42 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 11/15/2013 | REGULAR PAYMENT | 2,093.73 | 11/2013 | 419.66<br>186,328.75 | 894.84 | 779.23<br>3,167.65 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 11/15/2013 | MISC. POSTING | 65.72 | 11/2013 | .00<br>186,328.75 | .00 | .00<br>3,167.65 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 12/16/2013 | Assessed Late Chg | 65.72 | 12/2013 | .00<br>186,328.75 | .00 | .00<br>3,167.65 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |



**Bank of America**
Home Loans

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/27/2013 | REGULAR PAYMENT | 2,093.73 | 12/2013 | 421.67<br>185,907.08 | 892.83 | 779.23<br>3,946.88 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 12/27/2013 | MISC. POSTING | 65.72 | 12/2013 | .00<br>185,907.08 | .00 | .00<br>3,946.88 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 12/31/2013 | INTEREST ON ESC | 2.90 | 12/2013 | .00<br>185,907.08 | .00 | 2.90<br>3,949.78 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/06/2014 | CITY TAX PMT | -3,490.18 | 12/2013 | .00<br>185,907.08 | .00 | -3,490.18<br>459.60 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/15/2014 | Assessed Late Chg | 65.72 | 01/2014 | .00<br>185,907.08 | .00 | .00<br>459.60 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 02/12/2014 | REGULAR PAYMENT | 2,159.45 | 01/2014 | 423.70<br>185,483.38 | 890.80 | 779.23<br>1,238.83 | .00 | .00 | .00<br>-65.72 | 65.72<br>65.72 |
| 02/18/2014 | Assessed Late Chg | 65.72 | 02/2014 | .00<br>185,483.38 | .00 | .00<br>1,238.83 | .00 | .00 | .00<br>-131.44 | .00<br>65.72 |
| 02/28/2014 | MISC. POSTING | -65.72 | 01/2014 | .00<br>185,483.38 | .00 | .00<br>1,238.83 | .00 | .00 | .00<br>-131.44 | -65.72<br>.00 |
| 02/28/2014 | REGULAR PAYMENT | 2,093.73 | 02/2014 | 425.73<br>185,057.65 | 888.77 | 779.23<br>2,018.06 | .00 | .00 | .00<br>-131.44 | .00<br>.00 |
| 02/28/2014 | MISC. POSTING | 131.44 | 02/2014 | .00<br>185,057.65 | .00 | .00<br>2,018.06 | .00 | .00 | 131.44<br>.00 | .00<br>.00 |
| 03/17/2014 | Assessed Late Chg | 65.72 | 03/2014 | .00<br>185,057.65 | .00 | .00<br>2,018.06 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 04/07/2014 | REGULAR PAYMENT | 2,159.45 | 03/2014 | 427.77<br>184,629.88 | 886.73 | 779.23<br>2,797.29 | .00 | .00 | .00<br>-65.72 | 65.72<br>65.72 |
| 04/09/2014 | MISC. POSTING | -65.72 | 03/2014 | .00<br>184,629.88 | .00 | .00<br>2,797.29 | .00 | .00 | .00<br>-65.72 | -65.72<br>.00 |
| 04/09/2014 | REGULAR PAYMENT | 2,093.73 | 04/2014 | 429.82<br>184,200.06 | 884.68 | 779.23<br>3,576.52 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 04/09/2014 | MISC. POSTING | 65.72 | 04/2014 | .00<br>184,200.06 | .00 | .00<br>3,576.52 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 05/15/2014 | REGULAR PAYMENT | 2,093.73 | 05/2014 | 431.87<br>183,768.19 | 882.63 | 779.23<br>4,355.75 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 06/16/2014 | REGULAR PAYMENT | 2,093.73 | 06/2014 | 433.94<br>183,334.25 | 880.56 | 779.23<br>5,134.98 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 07/16/2014 | REGULAR PAYMENT | 2,093.73 | 07/2014 | 436.02<br>182,898.23 | 878.48 | 779.23<br>5,914.21 | .00 | .00 | .00<br>.00 | .00<br>.00 |

**Bank of America**

**Home Loans**

Page 15

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/16/2014 | CITY TAX PMT | -3,302.81 | 07/2014 | .00<br>182,898.23 | .00 | -3,302.81<br>2,611.40 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 08/12/2014 | REGULAR PAYMENT | 2,093.73 | 08/2014 | 438.11<br>182,460.12 | 876.39 | 779.23<br>3,390.63 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/16/2014 | REGULAR PAYMENT | 2,093.73 | 09/2014 | 440.21<br>182,019.91 | 874.29 | 779.23<br>4,169.86 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/17/2014 | OVERAGE REFUND | -346.26 | 09/2014 | .00<br>182,019.91 | .00 | -346.26<br>3,823.60 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/23/2014 | HAZARD INS PMT | -2,068.00 | 09/2014 | .00<br>182,019.91 | .00 | -2,068.00<br>1,755.60 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/16/2014 | Assessed Late Chg | 65.72 | 10/2014 | .00<br>182,019.91 | .00 | .00<br>1,755.60 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 11/07/2014 | REGULAR PAYMENT | 2,159.45 | 10/2014 | 442.32<br>181,577.59 | 872.18 | 779.23<br>2,534.83 | .00 | .00 | .00<br>-65.72 | 65.72<br>65.72 |
| 11/17/2014 | Assessed Late Chg | 65.72 | 11/2014 | .00<br>181,577.59 | .00 | .00<br>2,534.83 | .00 | .00 | .00<br>-131.44 | .00<br>65.72 |
| 11/28/2014 | MISC. POSTING | -65.72 | 10/2014 | .00<br>181,577.59 | .00 | .00<br>2,534.83 | .00 | .00 | .00<br>-131.44 | -65.72<br>.00 |
| 11/28/2014 | REGULAR PAYMENT | 2,033.72 | 11/2014 | 444.44<br>181,133.15 | 870.06 | 719.22<br>3,254.05 | .00 | .00 | .00<br>-131.44 | .00<br>.00 |
| 11/28/2014 | MISC. POSTING | 131.44 | 11/2014 | .00<br>181,133.15 | .00 | .00<br>3,254.05 | .00 | .00 | 131.44<br>.00 | .00<br>.00 |
| 12/16/2014 | REGULAR PAYMENT | 2,033.72 | 12/2014 | 446.57<br>180,686.58 | 867.93 | 719.22<br>3,973.27 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/31/2014 | INTEREST ON ESC | 2.83 | 12/2014 | .00<br>180,686.58 | .00 | 2.83<br>3,976.10 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/02/2015 | CITY TAX PMT | -3,302.81 | 12/2014 | .00<br>180,686.58 | .00 | -3,302.81<br>673.29 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/16/2015 | Assessed Late Chg | 65.72 | 01/2015 | .00<br>180,686.58 | .00 | .00<br>673.29 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 01/23/2015 | REGULAR PAYMENT | 2,033.72 | 01/2015 | 448.71<br>180,237.87 | 865.79 | 719.22<br>1,392.51 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 01/23/2015 | MISC. POSTING | 65.72 | 01/2015 | .00<br>180,237.87 | .00 | .00<br>1,392.51 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 02/12/2015 | REGULAR PAYMENT | 2,033.72 | 02/2015 | 450.86<br>179,787.01 | 863.64 | 719.22<br>2,111.73 | .00 | .00 | .00<br>.00 | .00<br>.00 |

**Bank of America**
**Home Loans**

Page 16

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/12/2015 | REGULAR PAYMENT | 2,033.72 | 03/2015 | 453.02 / 179,333.99 | 861.48 | 719.22 / 2,830.95 | .00 | .00 | .00 / .00 | .00 / .00 |
| 04/16/2015 | Assessed Late Chg | 65.72 | 04/2015 | .00 / 179,333.99 | .00 | 2,830.95 | .00 | .00 | .00 / -65.72 | .00 / .00 |
| 05/11/2015 | REGULAR PAYMENT | 2,099.44 | 04/2015 | 455.19 / 178,878.80 | 859.31 | 719.22 / 3,550.17 | .00 | .00 | .00 / -65.72 | 65.72 / 65.72 |
| 05/12/2015 | MISC. POSTING | -65.72 | 04/2015 | .00 / 178,878.80 | .00 | 3,550.17 | .00 | .00 | .00 / -65.72 | -65.72 / .00 |
| 05/12/2015 | MISC. POSTING | 65.72 | 04/2015 | .00 / 178,878.80 | .00 | 3,550.17 | .00 | .00 | 65.72 / .00 | .00 / .00 |
| 05/18/2015 | Assessed Late Chg | 65.72 | 05/2015 | .00 / 178,878.80 | .00 | 3,550.17 | .00 | .00 | .00 / -65.72 | .00 / .00 |
| 06/12/2015 | REGULAR PAYMENT | 2,099.44 | 05/2015 | 457.37 / 178,421.43 | 857.13 | 719.22 / 4,269.39 | .00 | .00 | .00 / -65.72 | 65.72 / 65.72 |
| 06/16/2015 | Assessed Late Chg | 65.72 | 06/2015 | .00 / 178,421.43 | .00 | 4,269.39 | .00 | .00 | .00 / -131.44 | 65.72 / .00 |
| 06/23/2015 | MISC. POSTING | -65.72 | 05/2015 | .00 / 178,421.43 | .00 | 4,269.39 | .00 | .00 | .00 / -131.44 | -65.72 / .00 |
| 06/23/2015 | MISC. POSTING | 65.72 | 05/2015 | .00 / 178,421.43 | .00 | 4,269.39 | .00 | .00 | 65.72 / .00 | .00 / .00 |
| 07/15/2015 | REGULAR PAYMENT | 2,099.44 | 06/2015 | 459.56 / 177,961.87 | 854.94 | 719.22 / 4,988.61 | .00 | .00 | .00 / -65.72 | 65.72 / 65.72 |
| 07/16/2015 | Assessed Late Chg | 65.72 | 07/2015 | .00 / 177,961.87 | .00 | 4,988.61 | .00 | .00 | .00 / -131.44 | 65.72 / .00 |
| 07/22/2015 | MISC. POSTING | -65.72 | 06/2015 | .00 / 177,961.87 | .00 | 4,988.61 | .00 | .00 | .00 / -131.44 | -65.72 / .00 |
| 07/22/2015 | MISC. POSTING | 65.72 | 06/2015 | .00 / 177,961.87 | .00 | 4,988.61 | .00 | .00 | 65.72 / .00 | .00 / .00 |
| 07/24/2015 | CITY TAX PMT | -3,351.76 | 06/2015 | .00 / 177,961.87 | .00 | -3,351.76 / 1,636.85 | .00 | .00 | .00 / -65.72 | .00 / .00 |
| 08/05/2015 | REGULAR PAYMENT | 2,099.44 | 07/2015 | 461.77 / 177,500.10 | 852.73 | 719.22 / 2,356.07 | .00 | .00 | .00 / -65.72 | 65.72 / 65.72 |
| 08/12/2015 | MISC. POSTING | -65.72 | 07/2015 | .00 / 177,500.10 | .00 | 2,356.07 | .00 | .00 | .00 / -65.72 | -65.72 / .00 |
| 08/12/2015 | MISC. POSTING | 65.72 | 07/2015 | .00 / 177,500.10 | .00 | 2,356.07 | .00 | .00 | 65.72 / .00 | .00 / .00 |

**Bank of America**
**Home Loans**

Page 17

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/17/2015 | Assessed Late Chg | 65.72 | 08/2015 | .00<br>177,500.10 | .00 | .00<br>2,356.07 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 09/02/2015 | REGULAR PAYMENT | 2,009.44 | 08/2015 | 463.98<br>177,036.12 | 850.52 | 719.22<br>3,075.29 | .00 | .00 | .00<br>-65.72 | 65.72<br>65.72 |
| 09/04/2015 | MISC. POSTING | -65.72 | 08/2015 | .00<br>177,036.12 | .00 | .00<br>3,075.29 | .00 | .00 | .00<br>-65.72 | -65.72<br>.00 |
| 09/04/2015 | MISC. POSTING | 65.72 | 08/2015 | .00<br>177,036.12 | .00 | .00<br>3,075.29 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 09/15/2015 | HAZARD INS PMT | -2,270.00 | 08/2015 | .00<br>177,036.12 | .00 | -2,270.00<br>805.29 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 09/16/2015 | Assessed Late Chg | 65.72 | 09/2015 | .00<br>177,036.12 | .00 | .00<br>805.29 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 09/23/2015 | REGULAR PAYMENT | 2,033.72 | 09/2015 | 466.20<br>176,569.92 | 848.30 | 719.22<br>1,524.51 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 09/23/2015 | MISC. POSTING | 65.72 | 09/2015 | .00<br>176,569.92 | .00 | .00<br>1,524.51 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 10/09/2015 | REGULAR PAYMENT | 2,033.72 | 10/2015 | 468.44<br>176,101.48 | 846.06 | 719.22<br>2,243.73 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/10/2015 | REGULAR PAYMENT | 2,059.56 | 11/2015 | 470.68<br>175,630.80 | 843.82 | 745.06<br>2,988.79 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/16/2015 | REGULAR PAYMENT | 2,059.56 | 12/2015 | 472.94<br>175,157.86 | 841.56 | 745.06<br>3,733.85 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/31/2015 | INTEREST ON ESC | 2.66 | 12/2015 | .00<br>175,157.86 | .00 | 2.66<br>3,736.51 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/15/2016 | REGULAR PAYMENT | 2,059.56 | 01/2016 | 475.20<br>174,682.66 | 839.30 | 745.06<br>4,481.57 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/21/2016 | CITY TAX PMT | -3,351.76 | 01/2016 | .00<br>174,682.66 | .00 | -3,351.76<br>1,129.81 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 02/09/2016 | REGULAR PAYMENT | 2,059.56 | 02/2016 | 477.48<br>174,205.18 | 837.02 | 745.06<br>1,874.87 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 03/16/2016 | REGULAR PAYMENT | 2,059.56 | 03/2016 | 479.77<br>173,725.41 | 834.73 | 745.06<br>2,619.93 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 04/18/2016 | Assessed Late Chg | 65.72 | 04/2016 | .00<br>173,725.41 | .00 | .00<br>2,619.93 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 04/28/2016 | REGULAR PAYMENT | 2,059.56 | 04/2016 | 482.07<br>173,243.34 | 832.43 | 745.06<br>3,364.99 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |

**Bank of America**
**Home Loans**

Page 18

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/28/2016 | MISC. POSTING | 65.72 | 04/2016 | .00 173,243.34 | .00 | .00 3,364.99 | .00 | .00 | 65.72 .00 | .00 .00 |
| 05/16/2016 | Assessed Late Chg | 65.72 | 05/2016 | .00 173,243.34 | .00 | .00 3,364.99 | .00 | .00 | .00 -65.72 | .00 .00 |
| 06/13/2016 | REGULAR PAYMENT | 2,125.28 | 05/2016 | 484.38 172,758.96 | 830.12 | 745.06 4,110.05 | .00 | .00 | .00 -65.72 | 65.72 65.72 |
| 06/16/2016 | Assessed Late Chg | 65.72 | 06/2016 | .00 172,758.96 | .00 | .00 4,110.05 | .00 | .00 | .00 -131.44 | .00 65.72 |
| 06/21/2016 | MISC. POSTING | -65.72 | 05/2016 | .00 172,758.96 | .00 | .00 4,110.05 | .00 | .00 | .00 -131.44 | -65.72 .00 |
| 06/21/2016 | MISC. POSTING | 65.72 | 05/2016 | .00 172,758.96 | .00 | .00 4,110.05 | .00 | .00 | 65.72 -65.72 | .00 .00 |
| 07/15/2016 | REGULAR PAYMENT | 2,191.00 | 06/2016 | 486.70 172,272.26 | 827.80 | 745.06 4,855.11 | .00 | .00 | .00 -65.72 | 131.44 131.44 |
| 07/18/2016 | Assessed Late Chg | 65.72 | 07/2016 | .00 172,272.26 | .00 | .00 4,855.11 | .00 | .00 | .00 -131.44 | .00 131.44 |
| 07/21/2016 | CITY TAX PMT | -3,368.43 | 06/2016 | .00 172,272.26 | .00 | -3,368.43 1,486.68 | .00 | .00 | .00 -131.44 | .00 131.44 |
| 08/16/2016 | REGULAR PAYMENT | 2,191.00 | 07/2016 | 489.03 171,783.23 | 825.47 | 745.06 2,231.74 | .00 | .00 | .00 -131.44 | 131.44 262.88 |
| 08/16/2016 | Assessed Late Chg | 65.72 | 08/2016 | .00 171,783.23 | .00 | .00 2,231.74 | .00 | .00 | .00 -197.16 | .00 262.88 |
| 08/17/2016 | MISC. POSTING | -131.44 | 07/2016 | .00 171,783.23 | .00 | .00 2,231.74 | .00 | .00 | .00 -197.16 | -131.44 131.44 |
| 08/17/2016 | MISC. POSTING | 131.44 | 07/2016 | .00 171,783.23 | .00 | .00 2,231.74 | .00 | .00 | 131.44 -65.72 | .00 131.44 |
| 08/17/2016 | MISC. POSTING | -131.44 | 07/2016 | .00 171,783.23 | .00 | .00 2,231.74 | .00 | .00 | .00 -65.72 | -131.44 .00 |
| 08/17/2016 | REGULAR PAYMENT | 2,059.56 | 08/2016 | 491.37 171,291.86 | 823.13 | 745.06 2,976.80 | .00 | .00 | .00 -65.72 | .00 .00 |
| 08/17/2016 | MISC. POSTING | 65.72 | 08/2016 | .00 171,291.86 | .00 | .00 2,976.80 | .00 | .00 | 65.72 .00 | .00 .00 |
| 08/17/2016 | MISC. POSTING | 131.44 | 08/2016 | 131.44 171,160.42 | .00 | .00 2,976.80 | .00 | .00 | .00 .00 | .00 .00 |
| 09/09/2016 | REGULAR PAYMENT | 2,059.56 | 09/2016 | 494.02 170,666.40 | 820.48 | 745.06 3,721.86 | .00 | .00 | .00 .00 | .00 .00 |

**Bank of America**
**Home Loans**

Page 19

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 09/20/2016 | HAZARD INS PMT | -2,353.00 | 09/2016 | .00<br>170,666.40 | .00 | -2,353.00<br>1,368.86 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 10/07/2016 | REGULAR PAYMENT | 2,059.56 | 10/2016 | 496.72<br>170,169.68 | 817.78 | 745.06<br>2,113.92 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 11/16/2016 | REGULAR PAYMENT | 2,099.65 | 11/2016 | 499.10<br>169,670.58 | 815.40 | 785.15<br>2,899.07 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 12/16/2016 | Assessed Late Chg | 65.72 | 12/2016 | .00<br>169,670.58 | .00 | .00<br>2,899.07 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 12/28/2016 | REGULAR PAYMENT | 2,099.65 | 12/2016 | 501.50<br>169,169.08 | 813.00 | 785.15<br>3,684.22 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 12/28/2016 | MISC. POSTING | 65.72 | 12/2016 | .00<br>169,169.08 | .00 | .00<br>3,684.22 | .00 | .00 | 65.72<br>.00 | .00<br>.00 |
| 12/30/2016 | INTEREST ON ESC | 2.71 | 12/2016 | .00<br>169,169.08 | .00 | 2.71<br>3,686.93 | .00 | .00 | .00<br>.00 | .00<br>.00 |
| 01/17/2017 | Assessed Late Chg | 65.72 | 01/2017 | .00<br>169,169.08 | .00 | .00<br>3,686.93 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 01/18/2017 | CITY TAX PMT | -3,368.43 | 12/2016 | .00<br>169,169.08 | .00 | -3,368.43<br>318.50 | .00 | .00 | .00<br>-65.72 | .00<br>.00 |
| 02/16/2017 | Assessed Late Chg | 65.72 | 02/2017 | .00<br>169,169.08 | .00 | .00<br>318.50 | .00 | .00 | .00<br>-131.44 | .00<br>.00 |
| 03/07/2017 | REGULAR PAYMENT | 2,231.09 | 01/2017 | 503.90<br>168,665.18 | 810.60 | 785.15<br>1,103.65 | .00 | .00 | .00<br>-131.44 | 131.44<br>131.44 |
| 03/16/2017 | Assessed Late Chg | 65.72 | 03/2017 | .00<br>168,665.18 | .00 | .00<br>1,103.65 | .00 | .00 | .00<br>-197.16 | .00<br>131.44 |
| 06/28/2017 | CITY TAX PMT | -2,076.45 | 01/2017 | .00<br>168,665.18 | .00 | -2,076.45<br>-972.80 | .00 | .00 | .00<br>-197.16 | .00<br>131.44 |
| 10/04/2017 | HAZARD INS PMT | -2,369.00 | 01/2017 | .00<br>168,665.18 | .00 | -2,369.00<br>-3,341.80 | .00 | .00 | .00<br>-197.16 | .00<br>131.44 |
| 12/29/2017 | INTEREST ON ESC | .57 | 01/2017 | .00<br>168,665.18 | .00 | .57<br>-3,341.23 | .00 | .00 | .00<br>-197.16 | .00<br>131.44 |
| 01/08/2018 | CITY TAX PMT | -2,076.45 | 01/2017 | .00<br>168,665.18 | .00 | -2,076.45<br>-5,417.68 | .00 | .00 | .00<br>-197.16 | .00<br>131.44 |
| 07/18/2018 | CITY TAX PMT | -2,175.01 | 01/2017 | .00<br>168,665.18 | .00 | -2,175.01<br>-7,592.69 | .00 | .00 | .00<br>-197.16 | .00<br>131.44 |
| 08/21/2018 | HAZARD INS PMT | -2,448.12 | 01/2017 | .00<br>168,665.18 | .00 | -2,448.12<br>-10,040.81 | .00 | .00 | .00<br>-197.16 | .00<br>131.44 |

**Bank of America**

**Home Loans**

Page 20

| Transaction Date | Description | Total Payment | PMT/MO | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/10/2019 | CITY TAX PMT | -2,175.01 | 01/2017 | .00 | .00 | -2,175.01 | .00 | .00 | .00 | .00 |
| | | | | 168,665.18 | | -12,215.82 | | | -197.16 | 131.44 |

### Fee Transaction Activity (05/2004 - 05/2019)

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 11/16/2011 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 11/16/2011 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 01/17/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 01/17/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 02/16/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 02/16/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 03/15/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 03/15/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 04/16/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 04/16/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 05/15/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 05/15/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 06/27/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 06/27/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 07/27/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 07/27/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 09/27/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 09/27/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 10/16/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 10/16/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |

**Bank of America**

**Home Loans**

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 11/14/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 11/14/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 12/19/2012 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 12/19/2012 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 01/16/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 01/16/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 02/15/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 02/15/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 03/28/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 03/28/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 05/07/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 05/07/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 05/16/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 05/16/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 06/17/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 06/17/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 07/16/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 07/16/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 09/16/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 09/16/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 10/31/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 10/31/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 11/15/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 11/15/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 12/27/2013 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 12/27/2013 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 02/12/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |

**Bank of America**

**Home Loans**

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 02/12/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 02/28/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 02/28/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 04/07/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 04/07/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 05/15/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 05/15/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 06/16/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 06/16/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 07/16/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 07/16/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 08/12/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 08/12/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 09/16/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 09/16/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 11/07/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 11/07/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 11/28/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 11/28/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 12/16/2014 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 12/16/2014 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 01/23/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 01/23/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 02/12/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 02/12/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 03/12/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 03/12/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |

**Bank of America**
**Home Loans**

Page 23

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 05/11/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 05/11/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 06/12/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 06/12/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 07/15/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 07/15/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 08/05/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 08/05/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 09/02/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 09/02/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 09/23/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 09/23/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 11/10/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 11/10/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 12/16/2015 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 12/16/2015 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 01/15/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 01/15/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 03/16/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 03/16/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 04/28/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 04/28/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 06/13/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 06/13/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 07/15/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 07/15/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 08/16/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |

**Bank of America**

**Home Loans**

Page 24

| Transaction Date | Fee Description | Charges | Payments |
|---|---|---|---|
| 08/16/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 08/17/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 08/17/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 11/16/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 11/16/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 12/28/2016 | Mortgage Pay Fee-Web | 6.00 | .00 |
| 12/28/2016 | Mortgage Pay Fee-Web | .00 | 6.00 |
| 08/25/2017 | Title Fee | 225.00 | .00 |
| 10/02/2017 | Attorney/Trustee Fee | 2,030.00 | .00 |
| 10/02/2017 | Court Filing Fee | 413.00 | .00 |
| 10/02/2017 | Recording Fee | 63.00 | .00 |
| 10/02/2017 | Process Server | 148.00 | .00 |
| 01/26/2018 | Attorney/Trustee Fee | 700.00 | .00 |
| 03/07/2018 | Attorney/Trustee Fee | 375.00 | .00 |
| 06/05/2018 | Attorney/Trustee Fee | 375.00 | .00 |
| 06/08/2018 | Court Cost | 300.00 | .00 |
| 06/27/2018 | Attorney/Trustee Fee | 150.00 | .00 |
| 07/06/2018 | Attorney/Trustee Fee | 580.00 | .00 |
| 01/10/2019 | Attorney/Trustee Fee | 250.00 | .00 |